**Symatha DOWD et al., Plaintiffs,**

v.

**BLACKSTONE CLEANERS, INC., a Corporation, Defendant.**

**Civ. A. No. 2–666.**

United States District Court
N. D. Texas,
Amarillo Division.

Nov. 25, 1969.

---

John W. Broadfoot, Amarillo, Tex., for plaintiffs.

O. M. Calhoun, Folley, Snodgrass & Calhoun, Amarillo, Tex., for defendant.

## MEMORANDUM OPINION

WOODWARD, District Judge.

Plaintiffs allege willful violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219, and pray for judgment against their employer, Defendant, for back wages. The suit arises out of contracts that Defendant had with the United States Air Force to alter, dry clean, and launder individual Air Force uniforms and other miscellaneous clothing. The uniforms were .those issued to the trainees at the Amarillo Air Force Base. The Air Force would pay for uniform alterations and the individual airman would pay for the other services furnished by Defendant. From November 1965 until May 1967 Defendant entered into contracts with the Air Force that required Defendant to abide by certain

provisions of the Contract Work Hours Standards Act, 40 U.S.C. §§ 327–332, including the overtime provisions. After May 1967, the contract with the Air Force stipulated that Defendant would be subject to certain provisions of the Service Contract Act of 1965 (McNamara-O'Hara Contract Act), 41 U.S.C. §§ 351–357, including the provision which requires employers to adhere to the Fair Labor Standards Act of 1938. The contract also stipulated that Defendant would be subject to the Contract Work Hours Standards Act, cited above, and the Walsh-Healey Public Contracts Act, 41 U.S.C. §§ 35–45.

In their Complaint, Plaintiffs specifically contend that Defendant violated § 206(a) of Title 29 U.S.C. requiring employers to pay a minimum wage to employees engaged in the production of goods for commerce and § 207(a) of Title 29 U.S.C. requiring employers to pay one and one-half times the regular rate for overtime hours worked by employees engaged in the production of goods for commerce. In its Original Answer, Defendant asserts four affirmative defenses to Plaintiffs' contentions: (1) that the Complaint fails to state a claim against Defendant upon which relief may be granted; (2) that Defendant has at all times paid Plaintiffs the wages and compensation due them; (3) that prior to February 1, 1967, Defendant was not subject to the Act because of the exemption stated in 29 U.S.C. § 213 (a) (3); and (4) that the two-year statute of limitations applies in this suit because, if there were a violation, it was not willful. In later pleadings and in argument before the Court during trial without a jury, Defendant raised other defenses: (1) that the Court has no jurisdiction in this cause; (2) that the Contract Work Hours Standards Act, incorporated into the Air Force contracts, is exclusive in its application and hence that Defendant was not required to abide by the provisions of the Fair Labor Standards Act; and (3) that the McNamara-O'Hara Contract Act and the Walsh-Healey Public Contracts Act, in-corporated into the Air Force contracts after May 1967, are also exclusive in their application and, since only the Federal Government is entitled to sue for violations under these enactments, Plaintiffs have no standing to assert their claims in this Court.

Defendant's seven contentions will be examined separately by the Court. As each question is examined, the Court will make whatever findings of fact and conclusions of law are necessary to resolve the issues and this Memorandum Opinion will constitute the Court's Findings of Fact and Conclusions of Law.

■ The first defenses that will be examined are the contentions that the public laws incorporated into the Air Force contracts provide exclusive remedies for any alleged wage and hour violations. Defendant's assertion that the Contract Work Hours Standards Act applies to the exclusion of the Fair Labor Standards Act is without merit. This very question was examined by the Fifth Circuit Court of Appeals in Mitchell v. Empire Gas Engineering Co., 256 F.2d 781 (1958), where it was concluded that the Contract Work Hours Standards Act and the Fair Labor Standards Act were "mutually supplementary rather than mutually exclusive." Defendant's other contention that the McNamara-O'Hara and Walsh-Healey Acts provide exclusive remedy for wage and hour violations under the Air Force contracts is also without merit. In Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017 (1950), the Supreme Court ruled that the Walsh-Healey Act and the Fair Labor Standards Act were mutually supplementary. Petitioners in the *Powell* case, individual employees, were consequently allowed to maintain their cause of action against Respondent employer under the Fair Labor Standards Act even though the employer was doing work under a government contract that incorporated the Walsh-Healey Act. Since the McNamara-O'Hara Act has been only recently placed in the statutes, the Court has

been unable to find any case construing the relationship of that Act and the Fair Labor Standards Act. However, in light of the contruction of the relationship of the Contract Work Hours Standards Act and the Walsh-Healey Act with the Fair Labor Standards Act, it is reasonable to assume that the McNamara-O'Hara Act was also intended by Congress to mutually supplement the Fair Labor Standards Act. This is especially so since the McNamara-O'Hara Act incorporates into its provisions certain provisions of the Fair Labor Standards Act. Therefore, it is the holding of this Court that the McNamara-O'Hara Act, like the Contract Work Hours Standards Act and the Walsh-Healey Act, mutually supplements the Fair Labor Standards Act. Consequently, the Fair Labor Standards Act is applicable in a case of this nature and the Plaintiffs have standing to assert their complaints.

■ The Court will now turn to Defendant's contentions that the Complaint fails to state a claim upon which relief can be granted and that the Court is without jurisdiction to hear this cause. As to the first of these contentions, it appears clear to the Court that Plaintiffs have stated a claim under the Fair Labor Standards Act, failure to pay minimum and overtime wages, upon which relief, payment of back wages, can be granted. As to the second of these contentions, it also appears clear to the Court that jurisdiction is present. Title 29 U.S.C. § 216(b) states that:

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."

In this suit, Plaintiffs have alleged violations of sections 206 and 207 and this Court can entertain an action to recover damages. Defendant's contentions that there is no claim upon which relief can be granted and that no jurisdiction is present are rejected.

Next, the Court will consider Defendant's principal defense that, prior to February 1, 1967, Defendant was not subject to the provisions of the Fair Labor Standards Act because of the exemption provided by section 213(a) (3) of the Act:

"The provisions of sections 206 and 207 of this title shall not apply with respect to * * * any employee employed by any establishment engaged in laundering, cleaning, or repairing clothing or fabrics, more than 50 per centum of which establishment's annual dollar volume of sales of such services is made within the State in which the establishment is located: *Provided,* That 75 per centum of such establishment's annual dollar volume of sales of such services is made to customers who are not engaged in a mining, manufacturing, transportation, or communications business * * *."

Plaintiffs were employed by Defendant, Blackstone Clearners, in altering, laundering, cleaning, and repairing clothing and fabrics. It was established by testimony at trial that Blackstone's customers, the Air Force and the individual airman, most of whom were in training, accounted for over 90 per cent of Blackstone's annual dollar volume of sales for the years in question and that these sales were made at the Amarillo Air Force Base, located near Amarillo, Texas. Hence more than 50 per cent of its sales were in Texas. An examination of the facts shows that Defendant, Blackstone Cleaners, is within the exemption of the Act if it can establish that its customers, the Air Force and the individual airman were "not engaged in a mining, manufacturing, transportation, or communications business."

To support its position on this point, Defendant cites Billeaudeau v. Temple Associates, Inc., 213 F.2d 707 (5th Cir. 1954). In that case, employees who were watchmen on a construction site where housing units were being built sued their employer under the Fair Labor Standards Act for minimum wages and overtime pay. Their employer was building the housing units for the Housing Authority of the town of Ville Platte, Louisiana. The Fifth Circuit found that, under the facts in the case, the Act did not provide coverage. It rejected the argument of the employees that they engaged in the production of goods for commerce under 29 U.S.C. § 203(j) "by guarding appellee's office on the construction premises, in which office were prepared and maintained payroll records, time sheets, and other matters pertaining to the labor force, which were regularly shipped between appellee's home office in Dibold, Texas, and the office on the construction site in Ville Platte, Louisiana." The Court did not consider the exchange of documents between Texas and Louisiana to be commerce as defined by the Act. The Fifth Circuit also rejected the employees' argument that they were engaged in commerce under 29 U.S.C. § 203(b). To reach this determination, the Court cited the Supreme Court in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538 (1943), where it was stated:

"The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it."

Applying that test, the Fifth Circuit concluded that the watchmen were not a part of commerce.

Although this case deals with coverage under the Act rather than exemptions from coverage, the Court assumes that Defendant is attempting to establish, by analogy, that the customers in this case could not be engaged in a mining, manufacturing, transportation, or communications business because they are not closely enough related to these activities. Also, even though it might seem that the Air Force Base, as distinguished from the individual airman, could perhaps be engaged in at least transportation and communications, Defendant contends that it was not under a proper interpretation of the exemption clause. To be so engaged, Defendant urges, the Air Force Base had to be involved in some kind of commercial transaction, such as collecting fares for flights from one state to another. Therefore, Defendant contends, he was exempted from coverage of the Fair Labor Standards Act under 29 U.S.C. § 213(a) (3), even though 90 per cent of its annual dollar volume of sales was made to the Air Force (for alterations) and to the airmen who were in training.

■ The Court finds no validity in Defendant's arguments. The contention that an Air Force Base, or any other military installation, cannot be involved in transportation and communication, which are terms defined as "commerce" under 29 U.S.C. § 203(b) was flatly rejected by the Sixth Circuit Court of Appeals in Mitchell v. Owen, 292 F.2d 71 (1961). In the Mitchell case, the Court stated:

"Owen contends that although it is possible for a military installation, such as the Naval Air Station here involved, to become an instrumentality of commerce * * * it can become so only if commercial transactions are involved in the interstate flights which admittedly take place daily to and from the Air Station. He insists that since no buying and selling of tickets or waybills is involved here, and since no 'goods' as defined in Section 3(i) of the Act, 29 U.S.C. § 203(i), pass through the Air Station, the jury properly found that it was not an instrumentality of commerce. The mandate of the Supreme Court is that military bases are facilities of commerce, 'to

the extent that interstate flights both land at and take off from them, and men, materials, and mail move through them from distant points.' Mitchell v. Lublin, McGaughy & Associates, 1959, 358 U.S. 207, 213, 79 S.Ct. 260, 265, 3 L.Ed.2d 243. Since it is not disputed that interstate flights in fact take place to and from Millington Air Station and that on these flights men and cargo are transported across state lines, the Air Station, as a matter of law, is an instrumentality of commerce."

In the present case, the testimony revealed that aircraft of varying descriptions including Strategic Air Command B–52 Bombers, flew in and out of Amarillo Air Force Base regularly. Also, these aircraft, carrying men and cargo, were constantly crossing state lines. Further, the Air Force Base had an extensive and powerful communications network that allowed base personnel to communicate with flight personnel almost anywhere in the western part of the United States. In light of the two *Mitchell* cases cited above and the evidence in this case, the Court is of the opinion that the Amarillo Air Force Base was at the very least engaged in a transportation and communication business. Furthermore, the Defendant did not discharge its burden of proving that it came within the exemption provisions of the Act. There is no total given in the record of Defendant's annual dollar volume of sales, nor was any proof offered that the large amounts paid by Amarillo Air Force Base for alterations to Defendant constituted less than 25 per cent of such annual dollar volume. It was, on the other hand, admitted that the amounts paid by Amarillo Air Force Base for alterations plus the individual sales to airmen constituted 90 per cent or more of Defendant's business.

The Air Force Base was not the only customer serviced by Defendant Blackstone Cleaners. Individual airmen in training were also served. From the testimony, it appears that many of these airmen were basic trainees who gener-ally spent less than three months at the base before being assigned to other bases throughout the United States and the world. Other customers were flight personnel who had their flight suits and other uniforms cleaned by Defendant. Still others were mechanics and various support personnel. These airmen, intimately involved in one way or another with the mission of the Air Force Base, must certainly be considered engaged in the business of the Air Force Base which includes transportation and communication. Furthermore, the uniforms that were altered and cleaned and that comprised practically all of Blackstone's annual dollar volume of sales were needed by the airmen so that the mission of the Air Force Base could be accomplished in a professional and military manner. Testimony in this case established that an airman is identified by the duty he performs and by the uniform he wears. The uniform is an integral part of the business of any air base and was an integral part of the business of Amarillo Air Force Base.

After careful consideration the Court holds that the exemption from coverage under 29 U.S.C. § 213(a) (3) is not applicable in this case because at least 90 per cent of Blackstone's annual dollar volume of sales was made to customers who were engaged in the transportation and communications business. Consequently, Defendant's contention that it at all times paid Plaintiffs the wages and compensation due them is rejected and the Court finds that Defendant violated sections 206 and 207 of Title 29 U.S.C.

■■ The last question to be resolved is whether Defendant's violations of the Act were willful. The Court finds that it was. To be willful, the violation must be shown to be deliberate, voluntary and intentional as distinguished from one committed through inadvertence, accident or by ordinary negligence. Nabob Oil Co. v. United States, 190 F.2d 478 (10th Cir. 1951), cert. denied, 342 U.S. 876, 72 S.Ct. 167, 96 L.Ed. 658 (1951).

In the present case, the testimony established that many of the Plaintiffs worked on Saturday afternoons and on Sundays during the summer months of 1966. When they worked on Saturday afternoons and Sundays, they would not punch the time clocks and they would be paid in cash. They would not receive overtime pay. Although Defendant testified that he did not tell them to refrain from punching the time clock, the Plaintiffs disputed this testimony. Under the circumstances, Plaintiffs' testimony seems more credible because, since punching the time clock was something they normally did, they would refrain from punching it only if they were so directed. Not only were Plaintiffs not paid for overtime work on these Sundays, they also were not paid minimum wages until sometime in 1967. Defendant testified that he did not pay minimum wages or overtime because he made some casual inquiries and determined that the Fair Labor Standards Act did not apply to him. However, he did not contact a lawyer or the Labor Department or an expert of any kind to verify this determination. Under the circumstances, this Court is of the opinion that Defendant's violation of the Fair Labor Standards Act was willful. Consequently, the three-year statute of limitations applies in this case. 29 U.S.C. § 255(a).

The Court finds that Plaintiffs' Exhibits 5 and 7 contain a correct statement of the hours worked by each of the Plaintiffs for the years in question, except that the following Plaintiffs worked a total of 70 hours overtime on ten different week ends during the summer of 1966, and that they were paid $1.10 per hour for such overtime, when they should have been paid $1.875 (1½ times the minimum rate). These Plaintiffs are: Symatha Dowd, Mary Elizabeth Bullard, Sandra Garcia, Nellie Johnson, Juanita Stafford, Aslee Patterson, Eva Rodriguez and Tonita Ester Hedpeth.

Plaintiffs' Exhibits 5 and 7 also are correct as to the amounts actually paid the Plaintiffs for their work from Monday morning through Saturday noon for the years in question.

Plaintiffs were entitled to be compensated at a minimum wage of $1.25 per hour for the first 40 hours worked each week and $1.875 per hour for all over the first 40 hours from a time commencing with three years prior to the date each Plaintiff's Complaint was filed herein up to February 1, 1967. From February 1, 1967 through January 31, 1968 the hourly rate should have been $1.40 per hour ($2.10 per hour for each hour over 40 worked in any week) and from February 1, 1968 to termination of employment the rate should have been $1.60 per hour ($2.40 per hour for each hour over 40 worked in any week). A table is attached to the filed copy of this opinion showing the amounts owed by Defendant to each Plaintiff, and judgment shall be entered for double these amounts plus a reasonable attorney's fee in favor of the Plaintiffs jointly of $1,000.00. For the weeks not listed on the table or exhibit, it is found that the wages actually paid the respective Plaintiffs for each of such weeks not listed, were equal to or greater than the minimum wages required by the Act.