Lillian **KRUMBECK**, on behalf of herself and all other employees similarly situated, Plaintiff,

v.

**JOHN OSTER MANUFACTURING COMPANY**, a Wisconsin corporation, Defendant.

No. 67–C–77.

United States District Court, E. D. Wisconsin.

June 2, 1970.

Podell & Ugent, Milwaukee, Wis., for plaintiff.

Quarles, Herriott, Clemons, Teschner & Noelke, by James C. Mallien, and Harold P. Southerland, Milwaukee, Wis., for defendant.

## OPINION

MYRON L. GORDON, District Judge.

This class action was begun by Lillian Krumbeck, on behalf of herself and about four hundred other similarly situated employees of John Oster Manufacturing Company. Suit is brought under the Equal Pay Act of 1963, 29 U.S.C. § 206 (d) (1), which prohibits job discrimination on the basis of sex. The plaintiff and the members of her class are all females; it is charged that they were paid lower salaries than males for equal work as defined in the statute. The complaint demands back pay in excess of one-half million dollars, plus statutory damages under 29 U.S.C. § 216(b).

By agreement, the case was tried with regard to only two of the claimants. However, there was no representation that these two women represented all the other claimants. Rather, the parties considered this to be an expeditious manner in which to resolve some legal uncertainties which might facilitate the disposition of the claims of other members of the class. Accordingly, the action was tried to the court on December 8 and 9, 1969. At the close of the trial, briefs were submitted. The statute under consideration, 29 U.S.C. § 206(d) (1), states:

"(d) (1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between em-

ployees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

The effective date of this section as it applies to the parties in this case is June 30, 1964, the date on which the collective bargaining agreement expired. See Public Law 88–38 § 4, 77 Stat. 56 (1963), cited at 29 U.S.C.A. § 206, at p. 490 (1965). The plaintiff filed her complaint on March 10, 1967. Thus, as provided in the statute of limitations, 29 U.S.C. § 255(a), we need only to examine the period going back two years to March 10, 1965 unless there is found to be a "willful violation" by the defendant, in which case we go back three years. This would take us back to the effective date of the act, June 30, 1964. The issue of willfulness will be discussed later in this opinion.

In 1957, Oster instituted a job rating system. It was put into operation through the assistance of a management consultant firm and is entitled the Merkcol Control System. The plaintiff has alleged generally that equal ratings under this system mean equal jobs under the Equal Pay Act.

A definition of job rating is contained in the foreword of a descriptive booklet prepared by the consultant (Pl. Ex. 4). It is there stated:

"Job rating is the process of analyzing jobs and ranking them on the basis of their relative skill, effort, responsibility, and job conditions, on a factual basis for the purpose of establishing a sound wage structure."

The considerations under the job rating system are like those enumerated in the act. Under the job rating system, the four items referred to in the quoted portion of the booklet are broken down into eleven factors. On any given job, each of the eleven factors is evaluated and assigned a specific degree, ranging from one to five. Each degree within a given factor is assigned a certain number of points. To obtain the total for any given job, the points assigned to each factor are added up. The total factor points range from a low of 140 to a high of 381. When the system was initiated, the higher total corresponded to a labor grade of 1 and the lower total to a labor grade of 11. However, as the system evolved, other labor grades were added. For example, now, a job with 140–161 points can be either a labor grade 11 or 21, and a job with 162–183 points can be either a labor grade 10 or 20. Without exception, the higher labor grade receives the lower pay.

The plaintiff alleges that a job which would be designated as a labor grade 10 for male employees would arbitrarily be classified as labor grade 20 for female workers. The defendant, however, claims that the actual assignment, as to labor grade 10 or 20 for example, is done by comparing the job with others currently assigned to grades 10 and also by determining if a pay incentive is necessary to hire a qualified operator. (Tr. pp. 132, 167–168).

For the court to determine whether this allegedly improper practice did in fact occur in the cases of the two claimants in question, we must examine their respective jobs on an individual basis. However, the plaintiff contends that "two jobs are equal when they have the same (or substantially the same) point analysis for each of the eleven factors. * * *" In my opinion, the plaintiff has inaccurately interpreted the law in this respect.

■ The Supreme Court has declared that the construction of an act by a regulatory agency, charged with enforcing that act, is to be given great weight. Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944); United States v. American Trucking Ass'ns, 310 U.S. 534, 549, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940). In an interpretive bulletin of the department of labor at 29 C.F.R. § 800.121, it is stated in part:

"Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance. For example, the fact that jobs performed by male and female employees may have the same total point value under an evaluation system in use by the employer does not in itself mean that the jobs concerned are equal according to the terms of the statute."

An example is set forth in 29 C.F.R. § 800.120, where there is a comparison of the jobs of a female bookkeeper and a male file clerk. The points for the two positions may be equal, but the jobs themselves might be substantially different. It was not the intention of Congress to compare jobs which are substantially dissimilar in work content. 109 Cong.Rec. 8698 (1963).

■ Were this court to find that equal points for each of the eleven factors which are used to rate jobs under the Merkcol Control System at Oster automatically meant "equal work" under 29 U.S.C. § 206(d) (1), both common sense and the intent of Congress would have to be ignored. The above quoted portion of 29 C.F.R. § 800.121, which calls for each job being examined on its own merits apart from any classification system, is the correct standard. Other related portions of 29 C.F.R. § 800.121 were specifically approved in Wirtz v. Basic Incorporated, 256 F.Supp. 786, 790 (D.Nev.1966).

■ Having found that each job must be independently examined, I will now separately evaluate the merits of the cases of the two claimants, Lorraine Hackel and Eunice Casey. In addition, although there is strong evidence that prior to June 3, 1966 the defendant maintained separate and different wage scales for males and females, in my opinion this does not constitute a per se violation of the Equal Pay Act; such conclusion is consistent with a determination to examine the facts of each case presented. The secretary of labor, through the wage and hour administrator, has said essentially the same thing at 6A BNA Lab.Rel.Rep. 95:616:

"Application of the equal pay standard is not dependent on classifications, point values, or job titles, but rather on actual job requirements and performance. Job content is the controlling factor. Neither does the existence per se of separate and different wage scales for "male jobs" and "female jobs" necessarily involve a violation of the Equal Pay Act."

I do not find a per se violation, but this does not preclude a violation being proved by additional evidence.

## LORRAINE E. HACKEL

Mrs. Hackel's job at Oster for the past 18 years (with two brief interruptions) has been that of an armature balancer. She alleges that she has been paid less than men who do equal work, as defined in 29 U.S.C. § 206(d) (1). The job of armature balancer was placed in labor grade 10 in May, 1957 (Pl. Ex. 10), and at some later date was placed in labor grade 20 (Tr. p. 93).

■ It is not necessary to examine Mrs. Hackel's job in any greater depth since I find that she has proved no discrimination. During the time period with which we are concerned, no male has ever worked as an armature balancer (Tr. pp. 91, 96), and the claimant has not adequately compared the job of armature balancer with any other job. Thus, the statutory requirements of equal skill, effort and responsibility and similar working conditions are not met. I have already found that showing equal

points under a classification system is insufficient; therefore, further proof would be necessary to permit a finding in favor of Mrs. Hackel. Such proof is not in the record. An attempt was made to compare Mrs. Hackel's job with that of honer, but the duties are not similar. In 29 C.F.R. § 800.120 it is stated:

"* * * On the other hand, it is clear that Congress did not intend to apply the equal pay standard to jobs substantially differing in their terms and conditions. Thus, the question of whether a female bookkeeper should be paid as much as a male file clerk required to perform a substantially different job is outside the purview of the equal pay provisions. It is also clear that the equal pay standard is not to be applied where only men are employed in the establishment in one job and only women are employed in a dissimilar job. For example, the standard would not apply where only women are employed in clerk typist positions and only men are employed in jobs as administrative secretaries if the latter really require substantially different duties."

Since no man has held the job of armature balancer, or any job with substantially similar duties, during the relevant period, no discrimination has been proved, and I rule for the defendants in the case of Lorraine E. Hackel.

## EUNICE CASEY

Miss Casey has been employed as an inspector at Oster for the past eight years, having worked at Oster for 15 years altogether. At present, there are six women and two men who hold the job of inspector; both men are paid more than the women.

In May, 1957, the job which Miss Casey presently holds was entitled "Inspector-Bench (Stock Material & Parts)," job number 218; it was assigned a total of 183 points in the Merkcol System, placing it in labor grade 10 (Pl. Ex. 6). However, the men were placed in labor grade 10a and the women in labor grade 10b. Grade 10b was later renumbered

as 20 and 10a became simply 10, with men only in 10 and women only in 20. The men who held this job in May, 1957 were placed in job number 24, which was entitled "Inspector-Bench (Stock Material & Parts) (Male)". (Pl. Ex. 7). The number of factor points, 183, was identical to that of the women's job. The job description for the women's job stated that they were to: "Inspect and/or test a variety of parts * * *"; whereas the men's job required them to: "Inspect and test incoming material * * *." One of the defendant's witnesses opined that the description of the men's job is broader (Tr. p. 199), but I find that any differences in the descriptions of the duties of the two jobs are really negligible.

On September 19, 1966, after the passage of the Equal Pay Act, the female insector's job was renamed "Insector-Parts II" (Pl. Ex. 8), with no other changes. At the same time, the male inspector's job was renamed "Inspector-Parts I" and was given five additional factor points for responsibility for safety of others, with the resultant pay raise to labor grade 9 (Pl. Ex. 9). Miss Casey and the other female inspectors remained in labor grade 20.

It is clear that the women who hold the job of Inspector-Parts II, and held the old classification of Inspector-Bench (Stock Material & Parts) have consistently since the advent of the Equal Pay Act been paid lower wages than the men inspectors. Such differential may be illegal if the work is equal under the statute. In other words, Miss Casey has proved a prima facie case of discrimination under the statute. If we determine that the work is in fact equal, then we must see if it comes under the exception of 29 U.S.C. § 206(d) (1) (iv). See Shultz v. Wheaton Glass Company, 421 F.2d 259 (3rd Cir. 1970). A discrimination in pay is acceptable if it is a "differential based on any other factor other than sex * * *." 29 U.S.C. § 206(d) (1).

Miss Casey testified that her job as Inspector-Parts II consisted of inspect-

ing newly received parts for flaws and defects before they were assembled in appliances. She inspects thousands of kinds of incoming materials (Tr. p. 217). She testified that she inspected such things as gears, shafts, switches, electrical cords, steel and wire. Her inspections were performed by diverse methods; at times she simply made a visual inspection and at other times she used hardness testers, micrometers and vernier calipers. The women do not use any gauges different from the men. (Tr. p. 220).

Miss Casey completed two seminar courses in inspection which were given by Oster (Pl. Ex. 16 and 17); she testified that there were men in the same courses. However, no man now holds the Inspector-Parts II job and never has. (Tr. p. 172). It is reasonable to conclude from this evidence that any man who attended the inspection seminars did so for the purpose of working as an Inspector-Parts I, which is the higher paying job.

Both Eunice Casey (Tr. pp. 74–75) and Mr. Krause, the union president (Tr. pp. 32, 49), testified that male and female inspectors do the same work. The defendant offered evidence which purported to show that the work of the female inspectors was not equal to that of the males. The foreman of the receiving inspection department at Oster testified that whenever there is heavy lifting or handling required by an inspector, a male inspector is assigned to that work (Tr. p. 210). He also testified that 90% to 95% of the male inspector's time is spent doing work different from that of the females. (Tr. p. 209). However, my examination of the duties of each sex as set forth in this record persuades me that the foreman's figure is completely erroneous, at least in terms of the language of 29 U.S.C. § 206(d) (1).

There was testimony also that samples of steel must be cut off by an inspector from a large coil which could weigh up to 1500 pounds. However, an inspector does not always have to move the coil; sometimes he or she can manuever around it to clip off a sample. On cross-examination, the foreman stated that truckers move the coils and that some of the truckers are women. (Tr. p. 214.)

As a demonstration, a sample of such steel (Def. Ex. 14) was cut in court by the foreman, using a tin shears. Miss Casey testified she had never cut such a sample (Tr. p. 78), and probably could not. However, the men inspectors do not always do this task either; sometimes others in the plant do. (Tr. p. 78.) In any event, the defendant did not sufficiently prove that this was a regular task which all women, as a sex, were unable to perform. See Shultz v. Wheaton Glass Company, 421 F.2d 259, 264 (3rd Cir. 1970). The court in Bowe v. Colgate-Palmolive Company, 416 F.2d 711, 718 (7th Cir. 1969) discussed the weight-lifting problem for females and concluded that each employee must "be afforded a reasonable opportunity to demonstrate his or her ability to perform more strenuous jobs on a regular basis."

Another job which the foreman testified was limited to the men was that of sampling and testing magnetic wire. (Tr. p. 205). The testimony was that drums weighing 200 to 300 pounds had to be rotated by the men to obtain samples. Once the sample is taken, the females could and did perform the tests on it. (Tr. p. 227).

The testimony by the foreman also indicated that only men tested Osterizer bases. He explained that the bases came packed in heavy cartons which the women could not handle. However, Miss Casey testified (Tr. p. 79) that she tested bases and that if she could not move the cartons alone, another woman would help her or a trucker would move them.

■ It thus appears that the female inspectors are capable of testing any item (Tr. pp. 216–223), and the only difficulty is in obtaining the samples. There are certain sampling duties which many women are not physically capable of performing, and therefore such duties

are consistently assigned to men. The fact that the men were required to perform occasional duties which the women were not "physically adequate to perform" does not mean that the jobs are distinguishable under the statute. The jobs as a whole must be viewed over the entire work cycle. Wirtz v. Rainbo Baking Co. of Lexington, 303 F.Supp. 1049 (E.D.Ky.1967). In Wirtz v. Koller Craft Plastic Products, Inc., 296 F.Supp. 1195, 1197 (E.D.Mo.1968), the court said:

> "So, too, the occasional performance by some men of a task requiring heavy lifting or handling which some, but not all, of the women employees might be physically inadequate to perform is too incidental and insignificant to justify making a distinction between the sexes in the rate of pay for operating "B" machines."

A similar expression was made in Wirtz v. Meade Mfg., Inc., 285 F.Supp. 812, 814 (D.Kan.1968), where the court said:

> "The occasional performance of duties requiring greater physical exertion does not render jobs unequal which are otherwise equal."

In Shultz v. American Can Company, 424 F.2d 356 (8th Cir. 1970), the court found that where the men spent up to 7% of their time doing heavy lifting and the remainder of the time operating their machines, there was not a valid distinction from the women's duties. Although there is evidence that the male inspectors in the case at bar spend a great deal more time than this on strenuous work, in my opinion such evidence is not credible. I find that the vast majority of the men's time is spent on duties similar to that of the women or on duties which women, or at least some women, are capable of performing.

■ If a job required frequent heavy lifting, and it were shown that women could not perform the task, and there were no other employees who could help, then a pay differential would be warranted. This is not the case here. The authorities I have cited demonstrate that occasional heavy lifting is not enough. In addition, 29 C.F.R. § 800.128 states in part:

> "Further, the occasional or sporadic performance of an activity which may require extra physical or mental exertion is not alone sufficient to justify a finding of unequal effort."

> " * * * a wage rate differential might be justified [if] * * * the extra effort so expended is substantial and is performed over a considerable portion of the work cycle."

One case which seems to reach a contrary result is Wirtz v. Dennison Manufacturing Company, 265 F.Supp. 787, 790 (D.Mass.1967); however, that case may be distinguishable in that the men were required to work without supervision, and the court found that they needed greater skill than the women.

■ It is clear that the law does not require that the jobs be identical. In Murphy v. Miller Brewing Company, 307 F.Supp. 829 (E.D.Wis. 1969), the court found that the jobs were equal even though the men worked in a different laboratory from the women. Also, in Wirtz v. Basic Incorporated, 256 F.Supp. 786, 790 (D.Nev.1966), the court defined the term "equal" as follows:

> " * * * Equal does not mean identical, and insubstantial differences in the skill, effort and responsibility requirements of particular jobs should be ignored * * *. The job requirements should be viewed as a whole."

■ Relying on the authorities I have cited and the facts as I find them, I hold that John Oster Manufacturing Company discriminated against Eunice Casey in violation of 29 U.S.C. § 206(d) (1) for the entire period of the statute's applicability.

## WILFULLNESS

■ A two year statute of limitations applies unless the defendant is guilty of a wilful violation, in which case the period is extended to three years, or in

U.S.C. § 255(a). I find that the dis- this case back to June 30, 1964. 29 crimination against Eunice Casey was wilful.

On June 15, 1964, the defendants' attorney wrote a letter to Mr. O'Donnel, the manager of industrial relations at Oster. (Def. Ex. 3.). This letter demonstrates that the defendant was generally mindful of its burdens under the new enactment. The second paragraph on page 3 states:

"With respect to the punch press operator job, it would seem that the problem of potential applicability of the equal pay standard could be avoided by up-grading the male employees performing the job on the basis of the additional physical effort and other additional factors involved in the male version of the job. * * * "

The defendants acted on this advice and did, on or before September 19, 1966 "upgrade" the male inspector's job to labor grade 9 by adding more factor points to the category of responsibility for safety of others. (Pl. Ex. 9.) However, the duties and responsibilities had not changed in any way to prompt such upgrading. (Tr. pp. 33, 145.) I conclude that the upgrading was done for the purpose of eluding the requirements of the Equal Pay Act.

Although the defendant claims that subsequent to June, 1966 sex has not been a factor in assigning jobs (Tr. p. 131), it is still difficult for a woman to get certain jobs which should be open to her. There is no posting system in the Oster plant, so women may not always know when an opening occurs. (Tr. p. 130.)

The evidence shows that Eunice Casey was capable of performing tests on sheet steel, yet she was never given the opportunity; that work was reserved for males. (Tr. p. 220.) It is shown by the defendant's evidence (Def. Ex. 7),

that the earliest any woman went to work in a previously all male job was September 13, 1966, more than two years after the applicability of the act. A two year delay in installing a female in previously all male jobs indicates that the defendant was exercising somewhat less than good faith.

CONCLUSION

I find that the defendant, John Oster Manufacturing Company, did not violate 29 U.S.C. § 206(d) (1) in its dealings with Lorraine E. Hackel.

I further find that · the defendant, John Oster Manufacturing Company, violated 29 U.S.C. § 206(d) (1) in its dealings with Eunice Casey.

I find that the defendant, John Oster Manufacturing Company, did not act in good faith and did not have reasonable grounds for believing that its dealings with Eunice Casey were consistent with the equal pay statute, and thus the defendant does not fall within the provisions of 29 U.S.C. § 260.

I find that the defendant violated 29 U.S.C. § 206(d) (1) wilfully in its dealings with Eunice Casey and that Eunice Casey is entitled to an award of actual damages and also to liquidated damages in an amount equal to the actual damages under 29 U.S.C. § 216(b) for the period June 30, 1964 to March 10, 1967.

Plaintiff's counsel is requested to submit proposed findings of fact and conclusions of law for signature after first exhibiting them to defendant's counsel.

Counsel are directed to meet and attempt to resolve the amount of damages payable to Eunice Casey and the applicability of this ruling to the other members of the class; if such matters are not resolved by October 1, 1970, the court contemplates appointing a special master to assist the court in determining the issue of damages and other outstanding disputes in this action.