Arthur COLEMAN et al.,
Plaintiffs-Appellees,

v.

JIFFY JUNE FARMS, INC., et al.,
Defendants-Appellants.

James D. HODGSON, Secretary of Labor,
United States Department of Labor,
Plaintiff-Appellee,

v.

JIFFY JUNE FARMS, INC., et al.,
Defendants-Appellants.

No. 71-1412

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1971.

Rehearing Denied May 17, 1972.

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

**1140**

Willis C. Darby, Jr., Mobile, Ala., for defendants-appellants.

H. Hayden Rector, Michael J. Salmon, Mobile, Ala., Beverley R. Worrell, Dept. of Labor, Atlanta, Ga., Bessie Margolin, Carin Ann Clauss, U. S. Dept. of Labor, Washington, D. C., for plaintiffs-appellees.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

The decision of the district court, 324 F.Supp. 664, is affirmed. A detailed statement of the Court's reasons for affirmance would serve no precedential value, see Local Rule 21,[1] except insofar as the decision interprets the three-year statute of limitations for the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 255, as amended in 1966.

Section 255 provides, in pertinent part, that every action for unpaid overtime compensation under the FLSA "shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a wilful violation may be commenced within three years after the cause of action accrued." In this action to recover unpaid overtime compensation, the district court held that the employer's refusal to pay overtime compensation was "wilful", even though the court also found that "the act or omission giving rise to the defendants' action was in good faith and he had reasonable grounds for believing that his acts or omissions were not in violation [of the FLSA]." The court therefore permitted the employees to recover their unpaid wages for three years back.

Before August 1966 the loaders and drivers employed by Jiffy June Farmers were paid overtime compensation in accordance with Section 7 of the FLSA. Then the Teamsters' Union organized the Jiffy June employees. The union negotiated a collective bargaining agreement with the Jiffy June management which granted an increase in the regular hourly wage, and in exchange the union agreed to a provision purportedly exempting the employees from the FLSA overtime rate because they were subject to the jurisdiction of the Interstate Commerce Commission.[2] Before entering into the agreement Robert A. Trai-

1. See NLRB v. Amalgamated Clothing Workers of America, 5 Cir. 1970, 430 F.2d 966.

2. Section 13(b) (1) of the FLSA provides that the overtime provisions of the Act shall not be applicable to "any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act, 1935." 29 U.S.C. § 213(b) (1).

Under Local Rule 21, we have today affirmed the district court's holding that Jiffy June's drivers and loaders were not exempt from the coverage of the FLSA by virtue of Section 13(b) (1).

nor, Jr., the principal shareholder of Jiffy June, had consulted his attorney, who advised him that the Jiffy June loaders and drivers would be exempt under the applicable provision of the FLSA.

So far as we have been able to discover, no appellate court has construed the statute of limitations since it was amended in 1966. Three district court decisions—two from this Circuit—have applied the three year period upon a finding of wilfulness. But the district court cases provide little guidance as to the applicable period of limitations when the employer seeks and then relies on the advice of counsel prior to departing from the federal wage standard by signing a collective bargaining agreement.

In Hodgson v. Hyatt, D.C.Fla.1970, 318 F.Supp. 390, the employer altered his records of hours worked to reflect falsely that his employees had been paid the statutory rate for overtime work. The district court applied the three year statute "to violations which are intentional, knowing, or voluntary as distinguished from accidental, and * * * [characterized by] conduct marked by careless disregard whether or not one has the right so to act." In Hyatt, the employer's alteration of his records demonstrated beyond any doubt that he knew of the applicability of the FLSA and intended to violate the Act. Hyatt therefore does nothing to resolve our problem here, namely, whether some lesser degree of knowledge may lead to a wilful violation of the Act. See also Krumbeck v. John Oster Mfg. Co., D.C. Wis.1970, 313 F.Supp. 257, where the court found that the employer had changed his job classifications "for the purpose of eluding the requirements of the Equal Pay Act." 313 F.Supp. at 264.

In Dowd v. Blackstone Cleaners, Inc., D.C.Tex.1969, 306 F.Supp. 1276, 1281, the district court applied substantially the same "intentional, knowing, or voluntary" test of wilfulness used in Hyatt, and found a wilful violation where the employees had refrained from punching a time clock when they worked overtime (on the weekends) and only then. The Court deduced that the employees had been ordered not to punch the clock, and that the employer had therefore sought to evade the FLSA. Thus Dowd, like Hyatt and Krumbeck, involved bad faith evasion of the Act and definite knowledge of its applicability. In Dowd, the defendant testified that he had made casual inquiries and been told that the Act did not apply to his employees. The court noted that the defendant did not consult "a lawyer or the Labor Department or an expert of any kind to verify this determination," and adhered to its view that the defendant knew his actions constituted a violation of the Act. Dowd, then, may imply in dictum that consultation with counsel is sufficient to negate wilfulness and avoid the three year statute of limitations, but it stops far short of any such holding.

█ In short, none of the three district court cases has addressed itself directly to the question whether a violation committed in good faith may yet be wilful, as the Government and the plaintiffs argue here. Even though Trainor consulted his lawyers, and evidently relied on legal advice, we agree with the district court that Trainor's decision to change Jiffy June's rate of pay was "wilful" within the meaning of that term as used in the 1966 amendment of § 255. Trainor decided to consent to the change in rates of pay for overtime work despite his awareness that the FLSA might prevent such a change. He had previously paid his employees the federal overtime rate; and Trainor's decision to request an opinion of counsel is further evidence that he did not stop paying the statutory overtime without any inkling that the federal wage scheme might thereby be violated. We cannot excuse Trainor from these suspicions simply because his lawyer told him that he need not fear federal overruling of his new agreement with Teamsters'. The advice of counsel to proceed with a favorable wage settlement which undercuts the FLSA would be an easy way of circumventing the requirements of the

Act—far too easy a way for us to assume that Congress intended to subject employees to the strict two-year limitations period whenever an employer's lawyer had given him the green light to restructure their pay.

The entire legislative history of the 1966 amendments of the FLSA indicates a liberalizing intention on the part of Congress. Requiring employers to have more than awareness of the possible applicability of the FLSA would be inconsistent with that intent. Consequently, we hold that employer's decision to change his employees' rate of pay in violation of FLSA is "wilful" when, as in this case, there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture? In this case, Trainor knew that the FLSA had to be considered when he ceased to comply with the Act and asked his lawyer if it was permissible to do so. We need not consider today whether the three-year statute of limitations applies in a case where the employer ought to have known of the possible applicability of the FLSA but can demonstrate compellingly that in fact he did not.

The decision below is affirmed.

### ON PETITION FOR REHEARING

PER CURIAM:

1. We adhere to the construction of Section 255 of the Fair Labor Standards Act embodied in the panel opinion of November 29, 1971. Even under the criminal provision of the Act, section 216(a), a "wilful" act has been interpreted to mean no more than one "deliberate, voluntary and intentional as distinguished from one committed through inadvertence, accidentally, or by ordinary negligence". Nabob Oil Co. v. United States, 10 Cir. 1951, 190 F.2d 478, 480. Out of caution, however, we note that our interpretation of the word "wilful" as used in Section 255 was not intended to apply to Section 216(a). Our decision is limited to the particular facts of this case and to the question before us: civil liability under the Fair Labor Standards Act.

2. In a supplemental petition for rehearing, the appellants state that "[n]either this court nor the district court specifically addressed itself to the separate and distinct defense of Jiffy Farms, Jiffy Poultry, and Trainor; namely

on the 18th day of August, 1966, defendant Jiffy Farms and defendant Jiffy Poultry entered into a collective bargaining agreement with Teamsters, Chauffeurs, Warehousemen and Helpers Local Union No. 991 (Teamsters), certified by the National Labor Relations Board . . . as the exclusive collective bargaining agent of the employees referred to in paragraph five of the complaint; said collective bargaining agreement contains a "final and binding" grievance and arbitration procedure; and, that prior to the filing of this action, it was finally determined through such grievance procedure that the employes referred to in paragraph five of the complaint were exempt from Section 7 of the Act, 29 U.S.C.A. 207, by virtue of Section 13(b) (1) of the Act, 29 U.S. C.A. 213(b) (1).

The appellants argue that their employees should be bound by their decision to process their claims for overtime wages through the grievance machinery of the collective bargaining agreement. In support of their contention that this issue is an important one, the appellants cite Iowa Beef Packers, Inc. v. Thompson, 405 U.S. 228, 92 S.Ct. 859, 31 L.Ed. 2d 165 (1972) where, after oral argument, the Supreme Court dismissed as improvidently granted a writ of certiorari to consider "whether . . . employees may sue in court to recover overtime allegedly withheld in violation of the Fair Labor Standards Act, if their grievance of alleged statutory violation is also subject to resolution under grievance and arbitration provisions of a col-

lective bargaining agreement". Certiorari was dismissed because "the grievance and arbitration provisions . . . of the collective bargaining agreement involved in this case . . . apply only to grievances 'pertaining to a violation of the Agreement.' "

It is not at all clear from the record in the present case whether it was "finally determined" through the contractual grievance procedure that the appellants' employees were exempt from the overtime provisions of the FLSA. Nor is it clear just which, if any, of the appellees were parties to the grievance. We do not address these uncertainties because we are convinced that appellants' argument is without merit, even assuming that all the aggrieved employees fully, and unsuccessfully pursued grievance procedures in an effort to secure vindication of their statutory right to overtime pay. We need not reach the question for which certiorari was originally granted in *Iowa Beef Packers, supra.*

The collective bargaining agreement between the Teamsters and the appellants defines a grievance as a "complaint by an employee or the Union concerning the interpretation or application of this agreement". Article V, Section 1. The overtime dispute is covered by this relatively restrictive language because the collective bargaining agreement further provides that its overtime provisions "shall not apply to any employee with respect to whom the Interstate Commerce Commission has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 304 of Title 49 United States Code".

On its face, this contractual provision appears to cast us directly upon the problem of the *Iowa Beef Packers* case, supra. We should certainly face a serious question of the need for arbitration if union and management had agreed by contract to state management's obligation to pay overtime in terms of management's statutory obligation under the Fair Labor Standards Act. There could

be some confidence in the legitimacy of arbitration under such circumstances, for union and management would each actively pursue differing views of the uncertain requirements imposed by the contract. The union would be required to make a good faith effort on behalf of the aggrieved employees, and management would, of course, be guided by its own interests.

The record in the present case, however, plainly reveals that the disputed provision in the Jiffy June collective agreement was not a provision to which management and union attached differing interpretations. As Jiffy June openly states in its brief at page 31, "The motor carrier exemption was suggested by the Teamsters. Through collective bargaining the truck drivers and loaders obtained a raise; the Teamsters, as the truck drivers' representative, recognized an overtime exemption". In truth, then, Article XII, Section 3 of the agreement, though ostensibly ambiguous and susceptible of interpretation through the grievance machinery, embodied an unequivocal understanding between Teamsters and Jiffy June's management. The understanding was that truck drivers and loaders were not to be paid overtime.

"Settling" the employees' grievances through the contractual grievance machinery was, under the circumstances of this case, a hopeless charade. Its mind made up and its credibility committed, the union could not possibly provide the aggrieved employees with the fair and vigorous representation to which they were entitled in attempting to vindicate their statutory claim for overtime wages. If employees not fairly represented may sue in federal court to enforce contractual rights, it follows a fortiori that employees not fairly represented may sue, without regard to grievance procedures, to enforce the detailed rights given them by Congress when it enacted the Fair Labor Standards Act. See Vaca v. Sipes, 1967, 386 U.S. 171, 87 S.Ct. 903, 17 L. Ed.2d 842.

The petition for rehearing is denied.