Maggie **THOMAS** et al.

v.

**STATE OF LOUISIANA.**

**Billy M. GRAHAM.**

v.

**STATE OF LOUISIANA.**

**Civ. A. Nos. 16061, 17466.**

United States District Court,
W. D. Louisiana,
Alexandria Division.

Sept. 22, 1972.

Robert B. Neblett, Jr., Alexandria, La., for plaintiffs.

William J. Guste, Jr., Atty. Gen., of Louisiana, J. Reginald Coco, Jr., Special Counsel, Baton Rouge, La., for defendant.

NAUMAN S. SCOTT, District Judge:

These actions were brought by the Louisiana Public Employees Council Number 17, American Federation of State, County and Municipal Employees, AFL–CIO, and some 700 of its members against the Louisiana State Department of Hospitals, the Louisiana State Hospital Board and the State of Louisiana itself, seeking unpaid overtime compensation, liquidated damages, attorneys fees and costs under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 et seq. The individual plaintiffs are or were employees of various hospitals, schools and institutions operated by the State of Louisiana. The Union was subsequently stricken as a party plaintiff and a motion to dismiss the action was granted in favor of the Department of Hospitals and the Hospital Board, leaving the State and the individual plaintiffs as litigants in these matters.

In 1966 the coverage of the Fair Labor Standards Act was extended to cover certain employers, removing the exemption of the States and their political subdivisions with respect to employees of hospitals, institutions and schools. 29 U.S.C. § 203(d) was amended to read:

"(d) 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee but shall not include the United States or any State or political subdivision of a State (*except with respect to employees of a State, or a political subdivision thereof, employed (1) in a hospital, institution, or school referred to in the last sentence of subsection (r) of this section,* or (2) in the operation of a railway or carrier referred to in such sentence), or any labor organization (other than when acting as an employer), or any one acting in the capacity of officer or

agent of such labor organization." (Emphasis added.)

Congress also expanded the list of categories of "enterprises" within the coverage of the Fair Labor Standards Act. 29 U.S.C. § 203(s) was amended to read, in part:

"(s) 'Enterprise engaged in commerce or in the production of goods for commerce' means an enterprise which has employees engaged in commerce or in the production of goods for commerce, including employees handling, selling, or otherwise working on goods that have been moved in or produced for commerce by any person, and which

. . .

(4) is engaged in the operation of a hospital, an institution primarily engaged in the care of the sick, the aged, the mentally ill or defective who reside on the premises of such institution, a school for mentally or physically handicapped or gifted children, an elementary or secondary school, or an institution of higher education (*regardless of whether or not such hospital, institution or school is public or private or operated for profit or not for profit*)." (Emphasis added.)

The effective date of these amendments was February 1, 1967. The validity of the amendments was sustained by the United States Supreme Court in Maryland v. Wirtz, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020, decided June 10, 1968.

The State concedes that some unpaid overtime compensation may be due some of the plaintiffs, contending that full compliance with the Act was achieved on January 1, 1969.

The Court ordered that the following issues be tried separately, prior to the determination of the amount due the plaintiffs and any other issues which might come before the Court:

(1) Whether overtime payments may be recovered for a period of three years prior to filing of suit or whether the re-

covery will be limited to a two year period;

(2) Whether an additional amount equal to the sums due the plaintiffs will be allowed as liquidated damages;

(3) Whether attorneys fees and interest will be allowed; and

(4) Whether credit will be allowed for compensatory time off given by the defendants subsequent to the pay period in which it was earned. These issues are before the Court for determination on the material which is presently in the record.

I. 29 U.S.C. § 255 provides:

"Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act . . .

(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, *except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.*" (Emphasis added.)

In Coleman v. Jiffy June Farms, Inc., et al., 458 F.2d 1139 (5th Cir. 1971), the Fifth Circuit Court of Appeal held that a violation may be willful even though committed in good faith. The Court stated:

" . . . we hold that employer's decision to change his employees' rate of pay in violation of FLSA is' 'wilful' when, as in this case, there is substantial evidence in the record to support a finding that the employer knew or suspected that his actions might violate the FLSA. Stated most simply, we think the test should be: Did the employer know the FLSA was in the picture?"

We must, therefore, examine the record in order to ascertain if there is substantial evidence therein to "support a finding that the employer knew or suspected that his actions might violate the FLSA".

Attached to defendant's answer to plaintiffs' interrogatory number 4 is a letter from Mr. Donald G. Broussard, the Comptroller of the University of Southwestern Louisiana which states that USL first became aware that overtime might be due its employees under the FLSA during the month of February, 1967. In its supplemental answer to interrogatory number 4, defendant states that the Legal Division of the Department of Hospitals became aware of the 1966 amendments approximately at the time of enactment. The following exchange in the deposition of Thomas W. Landry, Staff Attorney for the Department of Hospitals, clearly indicates that the "employer knew the FLSA was in the picture":

"Q. Now I want to make reference to the 1966 amendment to the Fair Labor Standards Act that brought the hospitals and institutions under that law. Are you familiar with that amendment?

A. Yes.

Q. At the time the amendment was before Congress were you aware of the fact that it was before Congress?

A. Yes, to an extent, not with all of its details, but I was aware of it— certain amendments were proposed.

Q. To bring the hospitals of the State under the Fair Labor Standards Act. Is that correct?

A. Within limitations, yes, vaguely yes.

Q. But you were aware of the amendment that did pass in 1966, you were aware of it while it was pending before Congress. Is that correct, sir?

A. I believe so—I cannot say with certainty, I was definitely aware that it was passed, when it was passed.

Q. Now it was passed in 1966—was it not?

A. Yes.

Q. When it was passed you were aware of the amendment and what it said. Were you not?

A. Yes.

Q. Was Mr. Sweeny (should be Sweeney), Mr. H. K. Sweeny, Assistant Director of the Department of Hospitals and General Counsel, aware of it?

A. Yes.

Q. What was the effective date of that amendment?

A. February 1, 1967.

Q. Prior to February 1 of '67 you were aware that the effective date was going to be February 1, 1967. Is that correct?

A. Yes.

Q. Now I assume since you and Mr. Sweeney were the two attorneys for the Department of Hospitals at that time that the passage of this amendment to the Fair Labor Standards Act was of some concern to you and Mr. Sweeney. Is that true?

A. It was discussed by us, yes.

Q. Now it was discussed by you with the idea that your Department of Hospitals might have to conform to that law and be covered by that law. Is that true?

A. We most definitely considered that possibility."

Defendant has attached certain correspondence to its supplemental answer to interrogatory number 12, among which is a letter dated February 27, 1967 from Mr. H. K. Sweeney to Mr. C. T. Lundquist, Administrator, Wage and Hour and Public Contracts Division, U. S. Department of Labor. This letter requests advice concerning the sufficiency of certain procedures followed by the State Department of Hospitals in light of the Fair Labor Standards Act of 1938.

■ The Court finds that the foregoing volume of uncontroverted evidence

meets the test of Coleman v. Jiffy June Farms, Inc., *supra,* and that the violation was a willful one. 29 U.S.C. § 256 provides:

"In determining when an action is commenced for the purposes of section 255 of this title, an action commenced on or after May 14, 1947 under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, or the Bacon-Davis Act, it shall be considered to be commenced in the case of an individual claimant—

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced."

Thus, the individual plaintiffs are entitled to recover any overtime pay due them for a period of three years from the date at which their names specifically appeared as a party plaintiff in the original complaint or amended complaint and their written consents to become such a party were filed in this Court.

■ II. 29 U.S.C. § 216(b) provides, in part:

"Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages  .  .  . "

The requirement of an award of liquidated damages may be overcome as provided in 29 U.S.C. § 260:

"In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216(b) of this title."

Thus, the burden of proof is upon the employer to show good faith and reasonable grounds and, even should such a showing be made, the award of liquidated damages remains within the discretion of the Court. McClanahan v. Mathews, 440 F.2d 320 (6th Cir. 1971).

■ The State has offered no facts to even remotely show, in the Court's opinion, that it has the requisite good faith and reasonable grounds. It was aware of the amendments prior to their passage. The intent of Congress is infinitely clear. The language of the statutes is straightforward and unequivocal. There was no question that the design was to extend the coverage of the FLSA to *all* schools, hospitals and institutions. The Court finds no vague, ambiguous or misleading administrative interpretations of the amendments which might be relied upon by the State in accordance with 29 U.S.C. § 259. It is apparent that the State gambled on the outcome of Maryland v. Wirtz, *supra*, waiting until the Supreme Court decision in that case to begin implementing the FLSA. The State's wager that the Supreme Court might find in favor of the plaintiffs in Maryland v. Wirtz can-

not be said to constitute "good faith" and "reasonable grounds for believing" that there was no violation. Conceding that the State's Attorneys were of the conviction that Maryland v. Wirtz would be decided favorable to the State (a very plausible concession), the clarity of the statement of Congressional purpose and the knowledge of that purpose on the part of the Attorneys involved precludes them from having reasonable grounds for believing that there would be no violation of the FLSA. Any other result would require Court approval of the operation of an Act of Congress before such an act could become effective, where such defenses are involved. The devastating effect that such a policy would have is obvious. The Court finds that an award of liquidated damages, as provided in 29 U.S.C. § 216(b) is warranted.

■ III. 29 U.S.C. § 216(b) requires the award of an attorney's fee to the plaintiff. The Court will reserve judgment concerning the amount of such an award for later determination. An award of interest would be inappropriate in view of the Court's ruling that liquidated damages should be awarded. McClanahan v. Mathews, supra, and cases cited therein.

IV. The Court pretermits consideration of the question of a credit for compensatory time until such time as facts are presented to it concerning the origin of the plan of compensatory time and the administration of that scheme. At the time these facts are presented the Court requires further briefing on this issue including a full discussion of the following cases: Bumpus v. Continental Baking Co., 124 F.2d 549 (6th Cir. 1941); Birbalas v. Cuneo Printing Industries, Inc., 140 F.2d 826 (7th Cir. 1944); Bergschneider v. Peabody Coal Co., 142 F.2d 784 (7th Cir. 1944); Gangi v. D. A. Schulte, Inc., 150 F.2d 694 (2d Cir. 1945), affirmed 328 U.S. 108, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); Bay Ridge Operating Co., Inc. v. Aaron, 334 U.S. 446, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948); and any other authorities that, in the opinion

of counsel, might be considered analogous to the problem before us.

Further proceedings in this matter are to be consistent with the principles expressed herein.