296 F.Supp. 1195 (1968)
W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,
v.
KOLLER CRAFT PLASTIC PRODUCTS, INC., a Corporation, Defendant.
No. 67 C 20(3).
United States District Court E. D. Missouri, E. D.
August 23, 1968.
Veryl L. Riddle, U. S. Atty., W. Francis Murrell, Asst. U. S. Atty., King M. *1196 Trimble and Daniel R. O'Neill, St. Louis, Mo., Harper Barnes, Regional Atty., Dept. of Labor, Kansas City, Mo., for plaintiff.
Morris A. Shenker and Murry L. Randall, St. Louis, Mo., for defendant.

MEMORANDUM OPINION AND ORDER
REGAN, District Judge.
This action was brought by the Secretary of Labor to enjoin alleged violations of the Equal Pay Provisions of the Fair Labor Standards Act of 1938, as amended, and to restrain the continued withholding of unpaid wages allegedly due certain female employees. We have jurisdiction under Section 17 of the Act, 29 U.S.C., Section 217.
The Equal Pay Provisions, enacted in June, 1963 (29 U.S.C., Section 206(d) (1) ) became effective June 11, 1964. The complaint alleges that since that date the defendant has violated the Act by discriminating on the basis of sex between men and women machine operators at its plant at Fenton, Missouri, by paying its female employees at less than the rates paid to employees of the opposite sex for equal work, the performance of which requires equal skill, effort and responsibility, and which are performed under similar working conditions.
Admittedly, defendant is and was engaged in the production of goods for commerce, and its employees are covered by the provisions of the Act. The sole disputed issue is whether defendant has discriminated on the basis of sex in paying its women machine operators at less than the rates paid to men operators for "equal work" as defined in the Act.
Defendant is and for some years has been engaged in the manufacture of plastic products at its plant located near Fenton. In February, 1964, more than six months after the enactment of the Equal Pay Act, but four months prior to its effective date, defendant signed a collective bargaining agreement with the United Glass and Ceramic Workers Union, covering a period of three years commencing September 30, 1963. The wage schedule provided a 10 cents an hour differential between "`A' Operators Men" and "`B' OperatorsWomen." Defendant operated under this contract until March 20, 1967, when a new collective bargaining agreement providing for an increase in wages was entered into. The latest contract continued the 10 cents an hour differential between an "Operator `A'" and an "Operator `B'" but deleted the "Men" and "Women" designations.
The operators involved in this case work on machines in two departments, the Compression Press and Injection Mold departments. There is no differential in an employee's rate of pay or seniority as between the Compression Press and Injection Mold departments. Whether a particular employee works in one or the other department at any given time is dependent solely on the available work.
There are machines classified as "A" and "B" in each department. The record does not disclose when defendant actually made this classification of its machines in relation to the time of the enactment of the Equal Pay Act. All of the machines produce plastic products on order for various customers. These products are of different sizes, some large, some small. In general, the larger plastic products are made on the "A" machines, which are larger than the "B" machines.
There are sixteen injection press machines, three of which (Nos. 2, 13 and 16) are classified as "A" machines to be operated by "A" operators. The No. 16 machine is a very large new machine acquired shortly before the trial commenced. Of the seven compression press machines, only the largest (No. 9) is classified as an "A" machine. One of the other six machines classified as "B" (No. 6) was disposed of in February, 1964, and another (No. 2) has not been run since March, 1964, so that for practical *1197 purposes there are but four class "B" compression machines.
Since the effective date of the Act, June 11, 1964, and for approximately a year and a half thereafter, both "`A' Operators Men" and "`B' Operators Women" regularly operated the "B" machines. Some men operated only "B" machines during this period but (by reason of their classification) were paid "A" wages. In fact, from June, 1964 through April, 1965, all of the compression machines were operated only by men.
Women have gradually been replacing men operators of "B" machines in both departments. During the first seven months after the effective date of the Act, the "B" injection machines were operated by men slightly over 50 per cent of the hours operated. The following year the percentage was decreased to 30.6 per cent. This downward trend has continued, so that during the first six months of 1967 the percentage was 5.7. It appears that by trial time, men operated "B" injection machines only during training periods and for short periods when "A" machines were not operating.
In our judgment, there is no substantial difference in the work performed by men and women operators on "B" machines. It is performed by both men and women under similar working conditions and requires of both the same degree of skill, effort and responsibility
Defendant has attempted to justify the differential in pay on the claim that men operators are able to do various odd jobs in addition to operating the machines. The fact that some "A" operators (on the first shift) are occasionally assigned tasks such as making "pills" for use in "B" machines constitutes no justification for defendant to pay all men who operate "B" machines a higher rate than women who do the same work. So, too, the occasional performance by some men of a task requiring heavy lifting or handling which some, but not all, of the women employees might be physically inadequate to perform is too incidental and insignificant to justify making a distinction between the sexes in the rate of pay for operating "B" machines.
What we are here concerned with is simply whether the wage disparity between men and women engaged in operating "B" machines is based on factors other than sex. We have concluded that the weight of the evidence demonstrates that the difference in the wage rates paid men and women who operate "B" machines was based solely on sex. As we have noted, all "B" compression machines were operated exclusively by men for some months after the effective date of the Act, yet when women replaced the men on the identical machines and doing the same work, their rate of pay was invariably 10 cents an hour less than that theretofore paid to men. And of significance is the further fact that some men operatorsclassified as "`A' Operators Men" operated only "B" machines for a year and a half after the effective date of the Act, and yet were paid as "A" operators. Prior to the latest contract of March 20, 1967, no man was ever classified as a "B" operatorand indeed there was no way under the earlier contract a man could be so classified.
Defendant stresses the fact that in the first six months of 1967, only 5.7 per cent of the total hours in which "B" machines were operated were on machines operated by men. And this figure includes the time during which newly employed men operators were being trained on "B" machines (at B wages) as well as brief periods during which "A" machines were (for lack of orders) not operated at all. In this connection it is apparent from the evidence that because of its present difficulty in obtaining competent "A" operators, defendant cannot afford to lay off its presently employed "A" operators during temporary shut downs of "A" machines.
We recognize the validity of defendant's position, but only insofar as the *1198 foregoing facts pertain to present compliance with the Equal Pay Provisions of the Act. Even plaintiff (in his proposed findings) recognizes that "(t)he men now regularly operate the `A' machines and only occasionally operate the `B' machines", the main thrust of his argument being that the work of the "A" operators and that of the "B" operators is substantially equal, a contention we reject.
In our view the wage rate which defendant paid its men operators prior to March 20, 1967 for the work of operating the "B" compression and injection machines thereby became the minimum rate which the defendant was legally obligated to pay its women operators who were assigned to operate the same machines and to perform in all substantial respects the same work as the men who operated those machines. And this is so even though some, but not all, of the men may have occasionally performed a few jobs on a "B" machine which required greater physical exertion than some of the women may have been capable of. This minimum wage rate so established was 10 cents an hour more than defendant actually paid the women operators. Sex was the sole basis upon which the defendant paid these women the lesser amount. The gradual replacement of the men operating "B" machines had no effect upon the lawful rate which we have found defendant had become obligated to pay the women. Under the new contract, the women operators are now receiving the minimum wage established as aforesaid.
We conclude, therefore, that defendant violated the Act by paying its women operators 10 cents an hour less than its men employees who operated "B" machines, and that such violation continued from the effective date of the Act until March 20, 1967, the date of the new contract. That contract eliminated any distinction between men and women operators. Thereafter, "A" operator jobs were no longer limited to men, and as they became vacant were made available to women.
Plaintiff argues that the very continuance of a wage differential between "A" and "B" operators under the new contract of itself constitutes a discrimination on the basis of sex. We do not agree. After a careful study of the record we have concluded that defendant has established that the greater pay for "A" operators is based on substantial factors other than sex. In our judgment, although the work of operating "A" and "B" machines is in many respects comparable, it is not "equal."
It is true, as plaintiff points out, that no education and little training is required to operate either class of machine. So, too, the work of operating "B" machines involves considerable dexterity and mental attention because of the greater number of "shots" put out on a "B" machine. However, an "A" operator must exert much more physical effort on a sustained basis than a "B" operator. The mere fact that some men are not able to operate "B" machines as well as women does not require a finding that the work of operating "A" and "B" machines is equal.
Over and beyond the differences between the work of "A" and "B" operators is the undisputed fact that although the "A" classification was formerly limited to men, such is no longer the case under the new contract. The evidence discloses that defendant has made "A" operator jobs available to both men and women on a non-discriminatory basis. One woman actually applied for a job as an "A" operator and briefly worked as such. There is some conflict in the evidence as to cause of her resignation, but we resolve such conflict in favor of defendant, and find that defendant did not discriminate against this employee by reason of her sex. Other women have also expressed interest in obtaining a job in the "A" classification, but since the only vacancies have been on shifts other than the first shift, they have not applied for the position.
We have not overlooked the evidence defendant introduced for the purpose of *1199 attempting to demonstrate that in general women are unable to perform the work required of an "A" operator. Whether or not this contention is accepted as a justification for defendant's employment of men only as "A" operators under the old contract, the fact remains that defendant is now and has been since March 20, 1967 willing to accept any qualified woman as an "A" operator and to pay her as such for work performed in that classification.
It is not the function of this Court to fix wage rates or even to suggest that a particular job classification should carry a higher rate than the parties to a collective bargaining agreement have agreed upon. So long as the difference between the wage rates which defendant pays for different jobs is not based solely on sex, we may not interfere. Even though as of trial time all "A" operators were men while most "B" operators were still women, we have concluded that since March 20, 1967, the higher rate is payable to the men operators in the "A" classification because they are "A" operators and not because they are men.
This action was filed January 17, 1967. Plaintiff does not allege that defendant's violation of the Act was willful, and we find that it was not. Because of the applicable 2-year statute of limitations (29 U.S.C., Section 255), plaintiff seeks back wages only from January 17, 1965. Plaintiff is entitled to an injunction restraining defendant from further withholding payment of back wages due its women operators from January 17, 1965 to March 20, 1967 at the rate of 10 cents an hour for each hour worked by them during said period.
The foregoing opinion constitutes our findings of fact and conclusions of law.
Plaintiff's attorneys are directed to compute the amount of unpaid wages and to prepare a decree in conformity herewith, submit the same to counsel for defendant and then to the Court for entry.