W. Willard **WIRTZ**, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

**MUSKOGEE JONES STORE COMPANY,** Incorporated, Defendant.

Civ. No. 6221.

United States District Court E. D. Oklahoma.

Sept. 18, 1968.

James E. White, M. J. Parmenter, U. S. Dept. of Labor, Dallas, Tex., and Charles Donahue, Solicitor of Labor, for plaintiff.

R. M. Mountcastle, Muskogee, Okl., Harry L. Browne and Jack L. Whitacre, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiff, Secretary of Labor, brings this action against the Defendant,

Muskogee Jones Store Company, claiming violations by the Defendant of the "equal pay" provision of the Fair Labor Standards Act of 1938 (Act), as amended, 29 U.S.C. § 201 et seq. Jurisdiction is present pursuant to Section 17 of the Act. Plaintiff claims that the Defendant has violated Section 6(d) (1) of the Act, 29 U.S.C. 206(d) (1), (added by amendment in 1963) which provides:

§ 6(d) (1) "No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

Plaintiff seeks to enjoin the Defendant from violating this Section and to restrain Defendant from withholding compensation due four of its female employees.

Defendant operated a retail department store in Muskogee, Oklahoma, (it has now gone out of business), with ten retail departments. Plaintiff makes no complaint with reference to three of these department managers (millinery, cosmetics and drapery) who were females,[1] but claims that four other department managers who were females were discriminated against on the basis of sex by not being paid as much as three other department managers who were males. These seven department managers involved in this case, their sex and their departments are as follows:

| NAME | SEX | DEPARTMENT(S) |
|------|-----|---------------|
| Habeck | Male | Men's Clothing. |
| Lockler | Male | Domestics, Linens and Boy's Department. |
| Waid | Male | Furniture, Home Furnishings, Warehouse and Delivery. |
| Hill | Female | Women's Clothing. |
| Casey | Female | Lingerie and Foundations. |
| Epps | Female | Infant's Wear and Girl's Clothing. |
| Barksdale | Female | Ladies Accessories. |

Plaintiff originally contended that all females should have been paid as much as the lowest paid male. This contention was later changed to request that Hill be paid as much as Habeck and that the other three female departments be paid as much as the lowest paid male.

It is agreed that the Defendant was not an enterprise, was engaged in interstate commerce, working conditions in

---

1. Presumably because their department volumes were smaller and they supervised fewer employees.

the store were similar for all department heads, the Defendant had no seniority system or merit system and the department heads did not function under a system which measured earnings by quantity or quality of production.

As the issues were thus finally joined herein, the Plaintiff contends that Habeck and Hill on the one hand and the other five department heads on the other hand were doing equal work on jobs the performance of which required equal skill, effort and responsibility with the female department heads receiving wages at a rate less than the male department heads, whereas, the Defendant contends that the department heads were not doing equal work on jobs the performance of which required equal skill, effort and responsibility, that the disparity in wages was based on factors other than sex and that certain of the department heads were exempt from the provisions of the Act pursuant to Section 13 of the Act, 29 U.S.C. § 213(a) (1).

■■ The burden of proof is upon the Plaintiff to establish that the department heads were doing equal work on jobs the performance of which required equal skill, effort, and responsibility with the female department heads being discriminated against (wage disparity) on the basis of sex and is upon the Defendant to establish any of the exceptions listed in the Section. Wirtz v. Wheaton Glass Co., (D.C.N.J.1968) 284 F.Supp. 23.

■ The term "equal" as used in the Act means "substantially identical" rather than "similar," "comparable" or "identical." Wirtz v. Wheaton Glass Co., supra.

■ The evidence reveals that all seven of the employees involved had the job title of department head and each was the head of a retail department in the store which was separate and different as to merchandise handled from all the other departments. The Court does

not believe that because all had the same job title or classification that the Plaintiff thereby makes out a case. 29 C.F.R. 800.121. Nor does the Plaintiff so contend. It is actual job requirements and performance that should be considered. However, the Plaintiff does urge that he is entitled to the relief sought notwithstanding the fact that none of the department heads could do the exact job of the other department heads. The evidence did disclose this inability. For example, the manager of the lingerie and foundations department could not manage the men's clothing department and vice versa.

■ The evidence further revealed that in addition to being a department head of the furniture and home furnishings department, the male employee Waid was also in charge of the warehouse and home delivery service for the entire store. None of the other employees involved herein had any responsibility with reference to the warehouse and home delivery service. Thus, Waid clearly had an additional responsibility not possessed by the other department heads. The Court cannot agree with the Plaintiff's position regarding this employee and his responsibilities to the effect that his additional duties were insignificant. The Court finds that the same were significant and substantial and, therefore, finds and concludes that Waid must be eliminated from consideration herein by reason of these additional and different responsibilities. Kilpatrick v. Sweet, (M.D.Fla.1966) 262 F. Supp. 561, Wirtz v. Dennison Mfg. Co., (D.C.Mass.1967) 265 F.Supp. 787.

As to the other employees involved herein, the evidence generally reveals that each head of a department buys for the same, establishes prices, keeps inventory records, determines when special sales will be conducted and accomplishes mark-downs on merchandise, prepares ads, makes required reports, supervises and trains other employees in the department, recommends the hiring and

firing of employees in the department to the store manager and engages in selling merchandise on the floor. However, with reference to the important duty of buying merchandise, the store manager testified that he had to assist some of the department heads more than others. The evidence reveals quite clearly that certain of the department heads were able to discharge their nonselling activities more quickly than others and thus, were able to spend more time selling merchandise on the floor. The evidence further disclosed that for many years the department heads were paid a commission on their personal floor sales (2 percent) and a bonus on the annual net of their department (3 percent). At the end of 1962 this practice was discontinued by the store, as to commissions, and as a result each department head, beginning in 1963, received an increase in his weekly base salary arrived at by dividing the total of his commissions for 1962 by fifty-two (weeks). When this was done each department head received a different monetary addition to his weekly base salary based on his past performance in floor selling. These different additions to weekly base salary were as follows:

| NAME | AMOUNT |
|---|---|
| Habeck | $15.22 |
| Lockler | None [2] |
| Waid | $17.10 |
| Hill | $ 3.57 |
| Casey | $14.09 |
| Epps | $11.56 |
| Barksdale | $ 6.11 |

In 1966 the practice of paying a net earnings bonus was discontinued by the store and as a result each department head received an increase in his weekly base salary arrived at by dividing the 1965 bonus by fifty-two (weeks). Again, each department head received a different monetary addition to his week-

ly base salary based on department net earnings, as follows:

| NAME | AMOUNT |
|---|---|
| Habeck | $14.71 |
| Lockler | $11.39 |
| Waid | $12.50 |
| Hill | $11.77 |
| Casey | $13.47 |
| Epps | $ 5.02 |
| Barksdale | $ 5.64 |

Appendix A hereto lists certain pertinent information with reference to the seven department heads involved and in addition thereto, the evidence reveals the following regarding each department head involved:

### HABECK

Male department head of the men's clothing department. Supervised two full time and one part time employees. Spent fifty percent of his time in floor selling. Had extensive prior experience as a manager of men's clothing departments. He had the exceptional skill of being a fitter of men's clothing. He received a starting salary in 1958 of $85.00 per week which was based on that he received from his previous employer. He received salary increases because he had several offers from competitors to work for them. His department generally had the most profit and his annual volume had been the highest, except for women's clothing.

### LOCKLER

Male department head of the domestics, linens, and boy's departments. Spent thirty percent of his time selling merchandise. He supervised two full time and one part time employees. He did all the buying and his annual volume was next behind women's clothing and men's clothing. He was not paid a commission after made head of this department in 1962, as his average commissions as a salesman in another

2. Lockler did not receive a commission, as did the others.

department were added to his starting base salary.

## WAID

Male department head of the furniture and home furnishing's department and also, he was in charge of the warehouse and home delivery service for the entire store. Because of his added responsibilities for the warehouse and home delivery service, which none of the other department heads had, he is not deemed to have had equal responsibilities and should not be compared with the other department heads for reasons aforesaid.

## HILL

Female department head of the women's clothing department. Has headed this department since 1962. Supervised two full time and two part time employees. Spent twenty percent of her time on the floor in selling. She received a $15.00 per week salary increase when she was moved, in 1962, as head of the drapery department to head of the women's clothing department. Her annual volume became the highest in the store and she has received good raises because of this.

## CASEY

Female department head of the lingerie and foundations department. Spent sixty to seventy percent of her time selling. Supervised one full time and two part time employees. She was skilled in fitting foundation garments. She is quite experienced and has steadily increased her annual volume.

## EPPS

Female department head of the infant's wear and girl's clothing department. She supervised one full time and one part time employees. Her buying duties were quite simple. She spent most of her time in selling.

## BARKSDALE

Female department head of ladies accessories. She supervised one full time and one part time employees. She required considerable assistance from the store manager in her buying. She spent quite a bit of time in selling on the floor. The price range of items in her department was quite low as compared with the other departments. Her annual volume has remained constant for the most part.

It is evident from the salary scale of the department heads that their salaries were not fixed *solely* on either annual volume, annual net profit, years of experience or number of employees supervised. There is no pattern which discloses such to be the case. The store manager denied that wage disparities were based on sex. It was his testimony that the salary of each was based on a consideration of other factors which included special skills such as fitting garments, annual volume increases, increases in net profit, a different weekly increase to each when commissions and then bonuses were terminated, buying skills, time spent on the floor in selling which was related to their ability to accomplish their non-selling tasks in minimum time, increases necessitated by competitors seeking their services, as well as experience and over-all performance.

With reference to Habeck and Hill, the Court finds and concludes that the Plaintiff has failed to establish its burden. The two did not perform jobs the performance of which required equal skill, effort and responsibility. Their skills varied as did their responsibilities. Neither could reasonably be said to be able to perform the job of the other. Moreover, the Defendant has carried its burden by establishing that the disparity in wages between the two was based on factors other than sex. Habeck's higher wage was due to his receiving a larger weekly increase to his base salary when commissions and bonuses were terminated than Hill received, due to salary increases granted when competitors were attempting to hire him away which did not occur as to Hill, due to his special skill in being able to fit men's garments which was a skill not possessed by Hill,

his ability to discharge his non-selling duties and spend more time on the floor in selling merchandise than Hill could and his greater experience than Hill.

■ As to the other employees, here again the Plaintiff has failed to establish its burden. Their skills varied, as did their efforts and responsibilities. None could manage the departments of the others. In addition, Barksdale and Epps did not have buying skills and responsibilities equal to Lockler and their annual volume was less than his. Neither Barksdale, Epps, or Casey supervised as many full time employees as did Lockler. Casey did not have the annual volume that Lockler had. Thus, the Court finds and concludes that the female department heads did not do equal work on jobs the performance of which required equal skill, effort and responsibility with Lockler and, in addition, his higher wage was based on factors other than sex, as aforesaid.

■ Moreover, the Plaintiff must fail herein by reason of the exemption provisions of Section 13(a) of the Act, 29 U.S.C. § 213(a) (1), which provides, "* * * any employee employed in a bona fide executive, administrative, or professional capacity * * *" shall be exempt from the provisions of the Act. As to employees of a retail or service establishment, the regulations provide that such employees are permitted to engage in up to 40 percent of work not "directly or closely related to the performance of executive or administrative activities" without losing their exempt status. 29 C.F.R., Part 541. The test provided by these regulations requires that (1) the employees primary duty is the management of a customarily recognized department, (2) the employee customarily and regularly directs the work of two or more employees, (3) the employee possesses authority to hire and fire employees or to make recommendations concerning the employment status of other employees and, (4) the employee customarily and regularly exercises discretion. In addition to these four tests and the 40 percent limitation, the Secretary has determined that a certain salary level has to be maintained. For the period beginning September 30, 1963, and terminating September 2, 1965, the minimum salary rate for an executive or administrative employee of a retail or service establishment was prescribed as not less than $80 per week. 29 C.F.R., § 541.5b(b). After September 2, 1965, the minimum salary rate for this category was raised to $100 a week. 29 C.F.R., § 541.118. In addition to these sections, a special proviso for high-salaried executives is established and commonly referred to as the "streamlined" test. 29 C.F.R., § 541.119. Under the "streamlined" test, the salary rate for retail and service establishment executives was $125 per week until September 2, 1965, and $150 per week after September 2, 1965. If an executive was compensated at this rate, it is only necessary that his primary duty consisted of the management of a customarily recognized department and included the customary and regular direction of the work of two or more employees.

The application of these requirements to the facts of this case indicate that Habeck and Lockler were exempt executive employees for certain relevant periods. From July 1964, to May 1966, Habeck received $140.40 per week. Habeck customarily and regularly supervised the work of two or more employees and his primary duty consisted of the management of the Men's Clothing Department of the Store. Thus, until September 2, 1965, when the salary requirement for the "streamlined" test went from $125 to $150 Habeck was exempt. Since May of 1966, Habeck received in excess of $150 a week until the store went out of business and, therefore, he was exempt during that period of time. For the nine months period from September 2, 1965, to May of 1966, Habeck did not meet the "streamlined" test because he did not have the required salary base of $150, however, he did meet the more detailed

test for lower-salaried executives, as outlined above. This is because the Court finds that his selling activities on the floor was necessary to the performance of his purchasing function by providing a means of acquiring information concerning the interest and desirability of various products and that at least one-half of this selling time was thus directly and closely related to the performance of his executive or administrative activities in the function of buying merchandise for the department. Therefore, Habeck during all periods should be considered an executive person and exempt from Section 6(d).

During the period of July 1964, to September 2, 1965, Lockler also met the requirements of the executive exemption. His salary during that period was $97 per week which was in excess of the $80 requirement and he testified he spent only 20 to 30 percent of his time selling on the floor. Thus, it clearly appears that his primary duty was supervisor of a recognized department, he directed the work of two or more employees, he recommended the hiring and firing of employees and he was required to exercise independent judgment and discretion in his buying and merchandising activities. It further appears that since May 1966, when his pay was increased to $111 a week Lockler then resumed the status of an exempt department head, as this rate is $11 in excess of the post-September 1965, $100 per week requirement. Thus, Lockler should be considered an executive person and exempt from Section 6(d) for the entire period involved except from September of 1965 til May of 1966. With these findings, the Court may not compare the duties of Hill with those of Habeck, as requested by the Plaintiff, nor may the Court consider the duties of the other three female department heads with those of Lockler except for the nine months period from September of 1965 til May of 1966.

Plaintiff's Complaint should, therefore, be dismissed. Counsel for Defendant will prepare an appropriate judgment.

## APPENDIX A

### COMPARISON OF WEEKLY WAGES AND DEPARTMENT SALES

| EMPLOYEE | WEEKLY WAGE [a] 6/64 – 5/66 | WEEKLY WAGE [b] AFTER 5/66 | DEPT. SALES 1965 | 1966 |
|---|---|---|---|---|
| HABECK | 140.40 | 158.00 | 140,128 | 153,698 |
| LOCKLER | 97.00 | 111.00 | 125,900 | 139,661 |
| WAID | 90.00 | 105.00 | 104,600 | 97,507 |
| HILL | 75.00 | 104.00 | 141,800 | 160,909 |
| CASEY | 72.80 | 106.00 | 90,600 | 107,274 |
| EPPS | 72.00 | 80.00 | 51,900 | 54,190 |
| BARKSDALE | 58.60 | 67.00 | 50,006 | 55,779 |

a. This included increase when commissions were terminated. The annual bonus was additional.

b. In May 1966, the year-end department profitability bonus was discontinued and the weekly rates were adjusted.