James D. **HODGSON**, Secretary of Labor, United States Department of Labor, Plaintiff-Appellant,

v.

**AMERICAN BANK OF COMMERCE,** Defendant-Appellee.

No. 30973.

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1971.

Rehearing Denied Oct. 8, 1971.

**418**

Bessie Margolin, Asst. Sol., Peter G. Nash, Sol., Carin Ann Clauss, Dept. of Labor, Washington, D. C., M. J. Parmenter, Regional Sol., James F. Gruben, Atty., Dallas, Tex., Jacob I. Karro, Anastasia T. Dunau, Attys., U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellant.

William S. Fly, Fly, Cory & Moeller, Victoria, Tex., for appellee.

Before TUTTLE, THORNBERRY and INGRAHAM, Circuit Judges.

THORNBERRY, Circuit Judge:

This action was brought by the Secretary of Labor (the Secretary) under the Equal Pay Act of 1963, 29 U.S.C.A. § 206(d) (1) (the Act),[1] to enjoin alleged wage discrimination on the basis of sex and to recover for the female employees of defendant (the Bank) the difference between their wages and the wages of male employees allegedly doing equal work during certain time periods.[2] We believe that the requested relief should have been granted in some instances.

This case is before this Court for the second time. The district court, in dismissing the first action, held that the wage differentials found were justified by reason of an officer's training program in which only the male employees were engaged. Wirtz v. First Victoria

---

1. 29 U.S.C.A. § 206(d) (1) reads:

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided,* That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee."

2. The authority of the Secretary to act on behalf of the workers is given by 29 U.S.C.A. § 206(d) (3), which provides:

"For purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this chapter."

And, 29 U.S.C.A. § 216(c) empowers the Secretary to bring civil action on behalf of employees to recover such "minimum wages or the unpaid overtime compensation."

Nat'l Bank, 58 CCH Lab.Cas. ¶ 32,074 (S.D.Tex.1968, not officially reported). Finding the training program to be administered in a discriminatory manner and not sufficiently formal, certain, or definite to comply with the Act, this Court reversed and remanded for a determination of whether in fact the men and women involved were performing equal work within the meaning of the statute and, if so, whether the differentials could be justified under any applicable exception. Shultz v. First Victoria Nat'l Bank, 5th Cir. 1969, 420 F.2d 648.

■ Upon remand, the parties agreed that the duties of all bookkeepers in the bank were equal unless additional individual duties were performed. The district court further found that the bank's paying and receiving, drive-in, collection and note teller positions required substantially the same skill, effort, and responsibility and were performed under similar working conditions.[3]

The three male employees—Darton, Smith and Wagner—were employed at the Bank during various time periods from May 1, 1965 to March 1, 1967. At different times they were employed in the teller and bookkeeping departments of the Bank. The Secretary alleged that the Bank discriminated in favor of these male employees during the various time periods in question by paying them more than female employees in the same capacities.

The district court found the Secretary's allegation to be without merit on the following bases:

1. During all periods in issue, the male employees involved were paid only slightly more than female employees.

2. At various times, a few women made slightly more than the men in the same department.

3. During one period, the male employee involved was engaged in a supervisory position, which made his job unequal to that of the women.

4. During several periods in question, the male employees were responsible for individual additional duties, which made their jobs unequal to those of the women in the same department.

Wirtz v. American Bank of Commerce, 64 CCH Lab.Cas. ¶ 32,400 (S.D.Tex. 1970, not officially reported). This appeal is a result of these findings.

■ Our review of the district court's findings is limited by Fed.R.Civ.P. 52 (a), and we are without power to set aside these findings unless they can be deemed clearly erroneous. A finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Such findings are likewise clearly erroneous if they are without substantial evidence to support them, or if the district court misapprehended the effect of the evidence. E. g., Lentz v. Metropolitan Life Ins. Co., 5th Cir. 1970, 428 F.2d 36. After a careful and thorough study of the record, we are convinced that several of the district court's findings are without sufficient supporting evidence and are clearly erroneous. We will discuss the bases for the district court's opinion in the order given above.

---

3. The Bank continues to assert that there are substantial differences between the Bank's various teller jobs. We recognize that "Congress in prescribing 'equal' work did not require that the jobs to be identical, but only that they must be substantially equal." Shultz v. Wheaton Glass Co., 3d Cir. 1970, 421 F.2d 259, 265. By this standard, the district court's determination that the various tellers per-

formed substantially similar duties, which could be considered equal work, is supported by substantial evidence. *See also* Wirtz v. American Bank of Commerce, 64 CCH Lab.Cas. ¶ 32,400 (S.D.Tex. 1970, not officially reported) ; Shultz v. First Nat'l Bank of Orange, 61 CCH Lab.Cas. ¶ 32,269 (E.D.Tex.1970, not officially reported).

## I.

The Secretary alleges wage discrimination in favor of Darton during his service as note teller from May 1, 1965 to January 1, 1966. During this period, the salaries of the tellers, all of whom were women with the exception of Darton, were as follows:

| | |
|---|---|
| Darton | $350.00/mo. |
| Watkins | 340.00/mo. |
| Bergman | 340.00/mo. |
| Others (7) | 217.00-280.00/mo. |

The district court found that although Darton was the highest paid teller during this period, the "disparity between Darton and the various other females [was] *not so great* as to convince [the court] there [had] been a sex-based wage discrimination." This finding is clearly erroneous in two respects.

■ First, the degree of a discrimination can serve as no basis for finding the discrimination to be sex-based or otherwise.[4] Sex discriminations can be found to come in all sizes. *E. g.*, Shultz v. Wheaton Glass Co., 3d Cir. 1970, 421 F. 2d 259 ($.215/hr. differential); Wirtz v. Basic Inc., D.Nev.1966, 256 F.Supp. 786 ($.15/hr. differential). *Any* difference in the wages paid to the respective sexes is prohibited by the Act unless adequately justified under one of the statutory exceptions.

■ Secondly, the district court held that the Secretary's statistical evidence indicating differentials was insufficient to convince the court that the discrimination was sex-based. The Secretary has no such burden to convince the court. Although the Secretary has the initial burden in such cases, the burden is met once he proves a differential between the

wages of male and female employees in substantially similar jobs. *E. g.*, Shultz v. Wheaton Glass Co., *supra*; Shultz v. American Can Co., 8th Cir. 1970, 424 F. 2d 356; Krumbeck v. John Oster Mfg. Co., E.D.Wis.1970, 313 F.Supp. 257; Wirtz v. Muskogee Jones Store Co., E.D. Okl.1968, 293 F.Supp. 1034. The Secretary clearly met this burden in the instant case by his statistical evidence clearly indicating a differential between Darton and *all* female employees in the same capacity. In order to dismiss, the district court had to be convinced by the Bank that the differential was due to a factor other than sex. Shultz v. Wheaton Glass Co., *supra*; Krumbeck v. John Oster Mfg. Co., *supra*. There being no evidence of any such "other factor", the court could not have been so convinced.

■ Any wage differential between the sexes, no matter how small and insignificant, is sufficient under the statutory prohibition. Such a differential has been adequately proved and gone completely unexplained. The Secretary has therefore clearly proved a violation of the Act and is entitled to the relief requested.

## II.

■ The district court found that Earl Smith was employed as a note teller from June 1, 1966 to November 1, 1966 at $350.00 per month. Edwin Wagner was employed as a note teller from November 1, 1966 to March 1, 1967, also at $350.00 per month. The female tellers during the same period were paid as follows:

| | |
|---|---|
| Watkins | $355.00/mo. |
| Bergman | 355.00/mo. |
| Others (5) | 230.00–300.00/mo. |

4. This is not to indicate that we think the differentials shown to be in reality less than substantial.

Darton had but two and one-half years of experience with the Bank during the period at issue, whereas the two women making $10 per month less had eight and nine years of experience. The only women with experience comparable to Darton were Francis Stevens with one and

three-fourths years service and Carmen Kraatz with two years of service. They were earning $245 and $225, respectively. As we stated in Bing v. Roadway Express, Inc., 5th Cir. 1971, 444 F.2d 687:

"We believe it evident that if the statistics in the instant matter represent less than a shout, they certainly constitute far more than a mere whisper."

The district court found that the Bank must have been motivated by factors other than sex because two women were making more than the men during the two periods in issue. In other words, the district court considered this fact to indicate that there was no differential between the wages of men as a group and women as a group during the period. The court stated:

> For there to be wage discrimination in favor of male employees, certainly it must be shown males routinely and systematically received the higher salaries for equal work.

Furthermore, the court indicated once again that teller salaries were not disproportionate enough to convince him that the differentials were sex-based. For the same reasons given in regard to Darton, we find this latter basis to be clearly inadequate.

The two women making $5.00 per month more than the men during this period had nine and ten years of previous service with the Bank. Smith and Wagner, on the other hand, had nine months and one year, respectively. The only woman in the department having comparable experience to that of Smith and Wagner was Ruby Mallette, with nine months of service, who was paid $230.00 per month—$100.00 less than the men. Other women in the department, with up to eight years of service at the Bank, were also being paid substantially less than the men.

The Secretary contends that under the district court's reasoning an employer could consistently hire women at a lower starting rate and be protected by the fact that some women, after long periods of service, ultimately reached higher salary levels than men subsequently hired. This, it is contended would cripple the administration of the Act by offering an easy method of evasion. The mere presence of a few women in the upper part of the wage scale would permit widespread discrimination against women as a group. This could result automatically through general periodical increments added to a discriminatory starting salary, or deliberately through the selection of a few women for favorable treatment or a few men for unfavorable treatment—the result of which would be to give protective coloration to a generally discriminatory pattern. It is enough to say that we agree.

The Bank, instead of meeting this argument, attempts in vain once again to show differences between the job of note teller and the other teller positions, a contention that was unacceptable to the lower court and is similarly unacceptable here. We think the statistics presented for this period when taken in the light of all the circumstances, including the experience factor, clearly indicate a difference in the manner in which the men and women tellers of defendant Bank were being paid during this period. To hold otherwise is to ignore clear reality and provide employers with the easy method of evading the Act's prohibitions envisioned by the Secretary.

The Bank has offered no proof of a valid statutory justification for the differential which we have found to exist during this period. The Secretary must, therefore, be granted the relief requested.

### III.

From December 12, 1965 to June 1, 1966, Smith was employed as drive-in teller "supervisor" at $325.00–$350.00 per month. The female tellers during the same period were compensated as follows:

| | |
|---|---|
| Watkins | $340.00–$355.00/mo. |
| Bergman | $340.00–$355.00/mo. |
| Others (7) | $217.00–$280.00/mo. |

For reasons previously discussed, there is a differential between the Bank's treatment in the teller department of its male and female employees clearly indicated by these figures. This is especially so in light of the differences in experience between Smith and the two best-paid women, Watkins and Bergman.[5]

---

5. See note 4 *supra*.

The Bank sought to justify these differences on the basis of Smith's "supervisory" duties during the period. The district court, admitting that the evidence was not overwhelming, nevertheless agreed that Smith performed enough such duties—supervising the cashing of checks, helping the other tellers balance out, and generally acting as "troubleshooter" when unusual or difficult problems arose—to make his work unequal to that of the women tellers.

■■ It was admitted by various officers of the Bank that Smith had no authority during this period to hire or fire the other outside tellers, give them time off, promote them, increase or decrease their salaries, criticize their work, suspend them, dock their pay, or impose discipline on them in any manner. Appendix pp. 111–113 and pp. 153–155. His extra duties were merely to set the outside tellers' break periods and "look after them" if they had problems. Appendix p. 154. It is undisputed that such problems arose at most only once per day and possibly at a rate of only once per week. They were in fact so insignificant that the Bank's witness had a difficult time estimating the frequency of their occurrence.[6] It is doubtful at best that such small, insignificant additional duties can ever serve as justification for the differential evidenced in the Bank's wage figures. See, e. g., Shultz v. American Can Co., supra; Murphy v. Miller Brewing Co., E.D.Wis.1969, 307 F.Supp. 829; Wirtz v. Koller Craft Plastic Products, Inc., E.D.Mo.1968, 296 F.Supp. 1195;

Wirtz v. Meade Mfg., Inc., D.Kan.1968, 285 F.Supp. 812; Wirtz v. Rainbo Baking Co., E.D.Ky.1967, 303 F.Supp. 1049; Wirtz v. Basic, Inc., supra. Furthermore, the regulations of the Secretary of Labor provide:

[t]he occasional or sporadic performance of an activity which may require extra * * * mental exertion is not alone sufficient to justify a finding of unequal effort * * *. [a] wage rate differential might be justified [if] * * * the extra effort so expended is *substantial and is performed over a considerable portion of the work cycle.* 29 C.F.R. § 800.128 (emphasis added)

Shortly after Smith was transferred to note teller, his work was assigned to Bernice Hoxworth, a woman with ten years banking experience, at $250.00 per month —$100.00 less than that paid to Smith. The Bank contends this differential was due to its discovery that the extra responsibility in the outside supervisor position was not as significant as first thought. The Bank thus claims "additional duties" as a defense to the differential between Smith and the other tellers and "no additional duties" as a defense to the differential between Smith and Hoxworth. The Bank cannot "have its cake and eat it, too" in this manner. That the Bank first believed that there were significant additional duties attendant to the position of outside supervisor can serve as a defense only to the granting of relief for discriminations occurring prior to the normal two-year

---

6. The testimony of Frances Steffens on direct examination was as follows:

Q Who were the other tellers outside during this period with you?
A I was one and Berger was another.
Q Then, you should know approximately how often you needed to go to him with a problem. How often would you need to?
A I don't remember.
Q You don't have any idea?
A No, sir.
Q In the normal course of a tellers, drive-in tellers operations on an average, how often does one need to consult someone else with a [93] problem?

A It varies.
THE COURT:
I think he is asking for your best judgment, young lady. I know it would vary from day to day, routinely, would you have to consult with this gentleman who was the head of the tellers once a day or once an hour, or what in your best judgment?
THE WITNESS:
Well, sometimes it could be once a day and sometimes it could be once a week.
Appendix pp. 75–76.

statute of limitation period, but not to the relief requested here. *See* Krumbeck v. John Oster Mfg. Co., *supra*. The Act forbids all discriminations between male and female employees not based on factors other than sex, not just those intended to be based on sex. We do not believe that the "based on any other factor other than sex" language of the statute was intended to provide a "good faith" defense to a clear violation of the Act.

The Secretary is thus entitled to the relief requested for this period.

Wagner was employed at this drive-in teller supervisor position from June 1, 1966 to November 1, 1966 at $350.00 per month. Salaries of the female tellers during this period were as follows:

| | |
|---|---|
| Watkins | $355.00/mo. |
| Bergman | $355.00/mo. |
| Others (6) | $230.00–$300.00/mo. |

The district court did not find the wage differential here to be due to any additional duties attendant to the supervisor position.[7] Instead, the court held that the amount of differential was not sufficient to warrant a finding of sex-based discrimination. For reasons evident from the previous discussions, we deem this finding to be clearly erroneous and hold the Secretary to be entitled to the relief he seeks during this period.

## IV.

From October 1, 1965 to December 12, 1965, Smith was engaged in both bookkeeping and drive-in teller duties. Both female tellers and bookkeepers during the applicable period were paid substantially less in most instances. As found by the district court, the evidence shows without dispute that Smith, although engaged in such duties, was hired exclusively as drive-in teller supervisor for facilities not yet completed at the time of his hiring. This supervisor position has been found to be not significantly different from other teller positions in the Bank and thus, in spite of the Bank's intent, can serve as no basis for differentiating Smith from the other tellers or bookkeepers.

It is undisputed, however, that Smith was engaged in both bookkeeping and teller activities during this period. A comparison, therefore, between him and either the female bookkeepers or the female tellers as an individual group would appear to be impossible. At least we think it clear that the Secretary has not met his burden of proof in this respect. Therefore, as to this part of the district court opinion, we affirm.

Wagner was classified as a bookkeeper from May 1, 1965 to June 1, 1965 and paid $325.00–$350.00 per month. The other bookkeepers, all women, were paid as follows:

| | |
|---|---|
| Lassman | $390.00/mo. |
| Others (9) | $217.00–$290.00/mo. |

The district court found no violation of the Act for three reasons. First, one woman was paid $45.00 per month more than Wagner. Lassman at this time had nine years of experience, whereas Wagner had just been hired. For reasons previously discussed, we believe this finding to be unsupportable. Secondly, the wage differential between Wagner and the remaining women in the department was not thought to be substantial enough to warrant a finding of sex-based discrimination. For the reasons previously discussed, this finding is clearly erroneous and the result of the district

---

7. The only evidence of the duties performed by Wagner during his period as outside supervisor was given by Frances Steffins as follows:

    Q Were you a paying and receiving teller from about June, 1966 to October, 1966, during that period of time?

    A Yes.

    Q Do you remember whether Mr. Wagner was a drive-in teller about that period of time?

    A He was a drive-in teller at one time, but the date I can't remember.

    Q Well, if he had been at that time, would he have been doing approximately the same duties?

    THE COURT:

    Just like any other drive-in teller, wasn't he?

    THE WITNESS:

    Yes.

    Appendix pp. 77–78

court's improper placing of the burden of proof. Thirdly, however, Wagner was assigned the additional duty of posting the "general ledger," which was found to require additional effort and responsibility because of its importance to the daily operation of the business. The court concluded that Wagner's work was unequal to that of the female bookkeepers and he could not therefore, be used to compare wages for purposes of the Act.

After a more than careful review of the record, we have determined that this finding cannot be classified as clearly erroneous. We therefore affirm as to this part of the district court's decision.

Thus finding the district court judgment to be clearly erroneous and without substantial supporting evidence in many significant respects, we affirm in part and reverse in part and remand for a determination on the issue of damages in accordance with this opinion.

Costs herein shall be taxed one-fourth against appellant and three-fourths against appellee.

## ON PETITIONS FOR RE-HEARING

PER CURIAM:

It is ordered that the petitions for rehearing filed by appellant and appellee in the above entitled and numbered cause be and the same are hereby denied.

We wish, however, to modify our opinion to the extent that it may appear to express a view as to the appropriate relief to be granted upon remand. We hold only that the Secretary has proved discrimination in certain respects. The issue of the relief to be granted under such a finding was not briefed by either party, and we in no way intend by our opinion to restrict the trial court in its determination of this issue upon remand.

To this end, in the phrase on the last page of the opinion, "remand for a determination on the issue of damages," the word "damages" will be changed to read "relief."

It is so ordered.