Claudette T. BOURQUE, Plaintiff,

v.

POWELL ELECTRICAL MANUFAC-
TURING COMPANY, Defendant.

Civ. A. No. 76–H–265.

United States District Court,
S. D. Texas,
Houston Division.

Dec. 31, 1977.

Eliot P. Tucker, Mandell & Wright, Houston, Tex., for plaintiff.

Richard R. Brann, Baker & Botts, Houston, Tex., for defendant.

SEALS, District Judge.

## MEMORANDUM AND ORDER

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.,* in which plaintiff alleges that she was denied equal employment opportunity because defendant did not pay her the same as it paid males doing the same or substantially similar work, and in addition or in the alternative, that defendant failed to afford her the opportunity to perform all of the duties and assume all of the responsibilities of the position to which she had ostensibly been promoted, despite her capabilities. Plaintiff also alleges that she was constructively discharged. She seeks back pay, attorneys fees and court costs.

The Court, sitting without a jury, having heard the evidence and arguments of counsel, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Plaintiff, Claudette T. Bourque, is a female.

2. Defendant, Powell Electrical Manufacturing Company (Powell Electric), is a corporation doing business in the State of Texas. At all times relevant to this lawsuit, Powell Electric operated a facility in Harris County, Texas, which employed more than fifteen persons.

3. Ms. Bourque began her employment with Powell Electric in October, 1967 as a junior clerk in the purchasing department and worked her way up to the position of buyer. During this six-year period she left defendant's employ on two occasions because of pregnancy.

4. Plaintiff worked as the secretary to Mr. Jack Heidelberg, the head of Powell's purchasing department, for most of this six-year period. During her last two years with the company she handled many of the functions of a buyer and an expediter even though her position was that of a secretary and clerk. (See Plaintiff's Exhibit 4, Heidelberg Letter of Recommendation).

5. On January 30, 1975 Powell fired one of the buyers in the purchasing department, Mr. Eddy Williams, because he was not performing an adequate job. He had been hired on January 7, 1974, at an hourly rate of $5.49 ($950.00 per month) and was making the same salary at the time he left the company.

6. Mr. Heidelberg testified that although Mr. Williams' assigned job responsibilities included job buying (buying electrical equipment for specific jobs); stock buying (buying the stock equipment which was regularly kept on hand at the company); all buying for Powell Magnetics Division, and negotiation of blanket orders for large quantities of copper and steel, Williams was only carrying out some of these responsibilities, namely, stock buying and buying for Powell Magnetics, and that is why he was fired.

7. After Eddy Williams left the company, plaintiff asked Mr. Heidelberg to recommend her for the position of buyer left vacant by Williams' departure. Ms. Bourque testified that she knew what the job entailed since she had been typing all of Eddy Williams' purchase orders and on occasion had talked to him about his work, and that she considered herself capable of handling the job.

8. The evidence reflects that Ms. Bourque was in fact capable of becoming a buyer. After being with the company for almost six years she was very familiar with the overall operation of the purchasing department. She had acquired some familiarity with the vendors and catalogs, not only from typing purchase orders but also from setting up and maintaining the requisition cards from which the stock buying was done and from listening and talking to the buyers during her years as a secretary. By her testimony she demonstrated a thorough knowledge and familiarity with the procedures, requirements and purposes of the various types of buying done at Powell. She impressed this Court as a very mature and intelligent person with initiative and this impression was supported by the testimony of her supervisor, Jack Heidelberg.

9. Mr. Heidelberg recommended to Mr. Tom Powell, Vice-President of the company at the time, that plaintiff be promoted to buyer.

10. Although Tom Powell testified in his deposition that he left the management of the purchasing department to Heidelberg (Powell Dep. at 11), the evidence reflects that at least insofar as Ms. Bourque was concerned, Mr. Powell made the ultimate decision as to whether or not she would be promoted and what her salary would be.

11. When Jack Heidelberg suggested that Claudette Bourque be promoted to buyer, Tom Powell was reluctant and expressed doubt as to her ability to handle the job. It is reasonable to infer that this reluctance was not based on any demonstrated lack of ability on Ms. Bourque's part

since Mr. Powell had no actual contact with her and was not aware of what job functions she was performing in the purchasing department. (Powell Dep. at 7–8). This inference is further supported by Mr. Powell's statement that he thought a man would always be better as a buyer than a woman. (Powell Dep. at 31).

12. Nevertheless, Tom Powell did agree to promote plaintiff to the position of buyer, at the same salary she was paid as a secretary, i. e., $3.75 per hour ($675.00 per month). She was told that she would be on a ninety-day trial period during which she would have the opportunity to prove herself.

13. Ms. Bourque agreed to Mr. Powell's terms because she wanted the opportunity for the better job. She testified that at a meeting with Mr. Powell and Mr. Heidelberg she told Tom Powell that she would accept the offer and that at the end of ninety days she would accept less than Eddy Williams had been making, but would not accept less than $850.00 per month.

14. It was plaintiff's understanding that Tom Powell agreed to this and in February, 1975 she moved into Eddy Williams' office and assumed the title, position and duties of a buyer. However, she was still required to punch the time clock, which Eddy Williams had not done, and which none of the men in the purchasing department at that time were required to do.

15. During the ninety-day trial period plaintiff performed well on the job. Mr. Heidelberg testified that Ms. Bourque was doing quite well at the time she left the company and would have become an excellent buyer. Mr. Robert Orr, Powell's de facto personnel officer, similarly testified that plaintiff was an excellent employee and would have been an excellent buyer.

16. At the end of the ninety days Mr. Heidelberg called plaintiff into his office and told her that Tom Powell would increase her salary to $4.19 per hour ($719.00 per month), and that she would be reviewed again in six months. Ms. Bourque felt that Mr. Powell had not kept his promise to pay her $850.00 per month, was very upset, and

subsequently gave the company two weeks' notice of her resignation. The company, however, preferred that plaintiff leave at once which she did on May 8, 1975.

17. Ms. Bourque then promptly filed a charge with the Equal Employment Opportunity Commission, was issued a right-to-sue letter after the expiration of 180 days, and filed this suit within ninety days thereafter.

18. The evidence reflects and the Court finds that plaintiff was doing the same or substantially similar work as the person she was hired to replace, Eddy Williams, but that she was paid substantially less than he was paid.

19. Defendant does not deny that Ms. Bourque was performing the same work that Eddy Williams performed, but instead maintains that plaintiff cannot compare herself to Mr. Williams, and should not have expected to be paid as much as he was paid, since Williams was not actually performing all the work that he was being paid to do.

This fact, however, was never communicated to plaintiff and she justifiably assumed that she was being promoted to take Eddy Williams' place and that she was entitled to receive the same salary that he was paid. There is no evidence that anyone at Powell ever mentioned to Ms. Bourque that Powell had been paying Eddy Williams too much for what he was doing and that they could not pay her that much. To the contrary, the evidence is that Ms. Bourque was promoted to fill the position left vacant by Eddy Williams and that everyone at Powell Electric demonstrated a tacit understanding that she was taking his place.

20. Powell further contends that at the time plaintiff was promoted the company made a decision to downgrade Eddy Williams' job and that plaintiff was not expected to assume all of the responsibilities and duties that were assigned to Williams but instead was promoted to the position of "Junior" buyer. Once again, this fact was never revealed to plaintiff. There was no

written description of the job of buyer in existence at the time, and no one ever specifically told plaintiff what her job included or referred to her as a "Junior" buyer. Although defendant offered into evidence at trial a list of the various buying positions (Junior, Intermediate and Senior) in the purchasing department and the respective duties assigned to each (Exhibit 1 to Heidelberg Deposition), the evidence is undisputed that none of the buyers at Powell ever referred to themselves or to one another as anything other than "buyer," and that this list was prepared after Ms. Bourque left the company and for the purposes of this lawsuit.

The job of "Junior" buyer did not exist until Ms. Bourque was promoted to buyer. Although Powell claims that this is because she was the only person without buying experience ever hired into a buying position, significantly she was the first female to hold a non-clerical position in the purchasing department. The only other person to hold the position of "Junior" buyer at Powell is Ms. Bobby Lewis, a female with five years experience buying for M. D. Anderson Hospital, who was hired after plaintiff left the company, and who was still a "Junior" buyer at the time of trial.

21. The evidence demonstrates and the Court finds that plaintiff was doing the same or substantially similar work as Robert Sears did at the time he started as a buyer, but was paid considerably less than he was paid.

Sears was hired as an expediter on April 17, 1975 before Ms. Bourque left the company. His starting salary was $5.31 per hour ($920.00 per month), an increase over what he was making at his previous job. Although he had worked for five years at Houston Lighting & Power as a shipping and receiving clerk, and as a part of this job did some expediting if orders were not received on time, he had no experience as a buyer. When he came to Powell he was not familiar with the nomenclature or Powell's procedures. After about a month as an expediter, Sears was transferred from expediting to buying. And although he testified otherwise at trial, Sears stated in his deposition that when he transferred to buying he was doing basically what plaintiff was doing when she left the company (Sears Dep. at 37). He also testified both at the trial and in his deposition that at the time plaintiff left Powell he was no more valuable to the company than she was. (Sears Dep. at 43). Yet he was paid $920.00 per month and plaintiff was paid $650.00 per month.

22. The Court also finds that even if plaintiff did not perform all of the duties of a buyer which Eddy Williams was *supposed to* perform and which Robert Sears *eventually* performed, she was qualified to do so, and there is sufficient evidence to convince the Court that she was denied this opportunity because of her sex.

23. Defendant contends that although plaintiff was not performing any of the more difficult aspects of the job of buyer, if she had stayed with Powell she would have eventually been trained in all aspects of buying, but she could not be taught everything at once.

This argument is unpersuasive for several reasons: First, at the time she was promoted, plaintiff already knew how to do stock buying.

Second, when plaintiff was promoted Powell decided to "downgrade" Eddy Williams' job. Shortly after plaintiff left Powell, however, the job was again elevated to the level of "Intermediate" buyer and Robert Sears, a male with no buying experience, stepped in at a much higher salary. The company then hired Bobby Lewis, a female, as the "Junior" buyer who, although she had five years buying experience, was hired at a salary much lower than Sears' and even lower than what she had been making at her previous job. After being with the company for over two years Ms. Lewis has only had one-half day training in job buying. She, like Ms. Bourque, was also put on a ninety-day trial period at the time she was hired.

24. Although the Court finds that plaintiff was discriminated against because

of her sex, there is no evidence that anyone at Powell was trying to force her to quit and the Court finds that plaintiff voluntarily left defendant's employ.

Plaintiff enjoyed a good working relationship with her supervisor, Mr. Heidelberg, and had little or no contact with Mr. Tom Powell, the person who was responsible for her wage rate.

## CONCLUSIONS OF LAW

25. At all times relevant to this lawsuit, Powell Electrical Manufacturing Company was an "employer" as that term is defined in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5 *et seq.*

26. The Court has jurisdiction of the subject matter and the parties. 28 U.S.C. § 1343 and 42 U.S.C. § 2000e–5(f)(3).

27. Plaintiff has met her burden of establishing a case of discrimination on the basis of sex in violation of 42 U.S.C. § 2000e by demonstrating that she performed substantially equal work for unequal compensation. *Orr v. MacNeill & Sons, Inc.,* 511 F.2d 166 (5th Cir. 1975); *Ammons v. Zia Company,* 448 F.2d 117 (10th Cir. 1971).

Although her job required substantially equal skill, effort and responsibility, as did Williams' job at the time he left Powell and Sears' job at the time he became a buyer, she was paid substantially less. *DiSalvo v. Chamber of Commerce of Greater Kansas City,* 416 F.Supp. 844 (W.D.Mo.1976).

28. Further, plaintiff has established a case of discrimination by showing that even if she did not perform all of the duties that were eventually assigned to Robert Sears, it was not because she was not qualified, but rather because she was not given the opportunity. *Shultz v. Wheaton Glass Company,* 421 F.2d 259 (3rd Cir. 1970).

29. Defendant has not met its burden of rebutting plaintiff's prima facie case by showing that the wage differential was due to a factor other than sex. *Hodgson v. American Bank of Commerce,* 447 F.2d 416, 420 (5th Cir. 1971).

30. The Court further concludes that plaintiff left her employ voluntarily and was not constructively discharged. *Young v. Southwestern Savings & Loan Association,* 509 F.2d 140 (5th Cir. 1975), relied on by plaintiff, is distinguishable from the instant case. In that case plaintiff was denied a valuable right, *i. e.,* the right to refuse to attend a prayer meeting, and was warned that the exercise of that right would result in her being fired. In this case there was no question of plaintiff's being fired and in fact she enjoyed a good working relationship with Jack Heidelberg, the head of the purchasing department and had little or no contact with Mr. Tom Powell, the person who was responsible for her job and wage rate.

Further, there is no evidence that anyone at Powell deliberately attempted to render her working conditions so intolerable that she would be forced to quit. See *Muller v. U. S. Steel Corp.,* 509 F.2d 923 (10th Cir. 1975), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41. While it is understandable that plaintiff would be upset over her situation at Powell, the Court cannot conclude that the situation was so bad that as a matter of law it amounted to constructive discharge.

31. Plaintiff is entitled to back pay from February 10, 1975, when she was promoted to buyer, to May 7, 1975, when she left Powell, calculated on the basis of the difference between her salary at the time she quit and the salary of Robert Sears. 42 U.S.C. § 2000e–5(g).

32. Plaintiff is also entitled to interest on the back pay, a reasonable attorney's fee and costs of court. 42 U.S.C. § 2000e–5(k). Plaintiff's counsel should move for an award of attorney's fees and file with the Court a motion and affidavit regarding the nature of his arrangement with plaintiff and his time and expenses.

It is accordingly ORDERED that plaintiff Claudette Bourque have and recover of and from defendant Powell Electrical Manufacturing Company, the sum of $786.24 back pay plus interest at 9% from the date of judgment together with her costs herein incurred and expended.

In the event that any of the foregoing Findings of Fact also constitute Conclusions of Law, they are adopted as such. In the event that any of the foregoing Conclusions of Law also constitute Findings of Fact, they are also adopted as such.

The Clerk will file this Memorandum and Order and provide counsel for all parties with a true copy.